# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**<br><br>**JURY DEMAND** |

The Consumer Financial Protection Bureau (Bureau) brings this action against Pennsylvania Higher Education Assistance Agency (PHEAA) (d/b/a American Education Services or AES) and alleges the following:

## INTRODUCTION

1. Bankruptcy provides consumers a financial fresh start from burdensome debts through a discharge. When a bankruptcy court issues an order of discharge, it releases a consumer from personal liability for all debts, except for certain debts identified in the Bankruptcy Code. Discharged debts are no longer owed, and creditors can no longer legally attempt to collect on them.

2. Most student loans are subject to a stringent standard for

1

discharge under the Bankruptcy Code. These debts are not discharged unless a bankruptcy court determines that repaying the loan would impose an undue hardship on the consumer (typically in a separate action filed by the consumer with the bankruptcy court, called an adversary proceeding). But some private student loans are not subject to that undue hardship standard under the Bankruptcy Code, and thus, are discharged by a bankruptcy court's standard order of discharge (Order of Discharge). Consumers are no longer required to pay these discharged debts, and creditors are prohibited by law from taking action to collect discharged debts.

3. PHEAA is one of the nation's largest servicers of private student loans. Nevertheless, PHEAA fails to recognize that some private student loans are discharged in bankruptcy without a showing under the undue hardship standard and lacks policies and procedures to identify which private loans it services have been discharged by a bankruptcy court's Order of Discharge.

4. As a result, PHEAA treats certain discharged private student loans as though the consumer still owes those debts. PHEAA furnishes information about those discharged loans to consumer reporting agencies as if the debts are still owed. PHEAA also resumes collecting on the loans

after discharge. By collecting on discharged loans, PHEAA demands payments from consumers who no longer have any legal obligation to repay.

5. PHEAA's failure to distinguish between discharged and non-discharged private student loans, its collection on discharged debts, and its furnishing inaccurate information to consumer reporting agencies causes or is likely to cause substantial injury, as consumers will either pay debt they do not owe or risk negative credit reporting and default for non-payment.

6. PHEAA's practice also takes unreasonable advantage of these consumers' inability to protect their interests in having their loans discharged.

7. Furthermore, PHEAA's failure to establish reasonable policies for private student loans that were discharged results in its furnishing inaccurate information to consumer reporting agencies.

8. The Bureau brings this action under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564(a), 5565, and the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*, through its implementing regulation, Regulation V, 12 C.F.R. part 1022, to obtain permanent injunctive relief, restitution, refunds, damages, civil money

penalties, and other appropriate relief for PHEAA's violations of Federal consumer financial law in connection with servicing and collection of private student loan debt.

## JURISDICTION AND VENUE

9.  The Court has subject-matter jurisdiction over this action because it is brought under Federal consumer financial law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

10. Venue is proper in this District because PHEAA is located in and does business in this District. 12 U.S.C. § 5564(f).

## PLAINTIFF

11. The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer financial products or services under Federal consumer financial laws. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority to enforce Federal consumer financial laws, including the CFPA and the FCRA. 12 U.S.C. §§ 5531(a), 5564(a)-(b); 15 U.S.C. § 1681s(b)(1)(H).

## DEFENDANT

12. PHEAA is a state-chartered student loan servicer and guaranty

agency, headquartered in Harrisburg, Pennsylvania.

13. As of December 2023, PHEAA serviced a portfolio of student loans worth roughly $17.8 billion.

14. PHEAA is a "covered person" under the CFPA, 12 U.S.C. § 5481(6)(A), because it offers or provides a "consumer financial product or service" by engaging in servicing student loans and collecting debt. 12 U.S.C. § 5481(5), (15)(A)(i), (15)(A)(x).

## FACTUAL ALLEGATIONS

### DISCHARGE OF STUDENT LOANS IN BANKRUPTCY

15. A bankruptcy discharge releases consumers from personal liability for certain debts and prohibits creditors and loan servicers from taking action to collect those discharged debts.

16. After a consumer successfully completes certain required procedural steps in a bankruptcy case, the consumer is entitled to a discharge unless there is litigation involving objections to the discharge, typically in an adversary proceeding.

17. The bankruptcy court usually issues a standard order of discharge (Order of Discharge), which is not specific as to the consumer and thus, does not identify which of the consumer's debts are discharged or excepted from discharge.

18. Section 523 of the Bankruptcy Code lists the various categories of debts excepted from the bankruptcy court's Order of Discharge. Under 11 U.S.C. § 523(a)(8), certain student debts are excepted from discharge unless repayment would present an undue hardship to the consumer.

19. Section 523(a)(8)(A) excepts from discharge: (i) student loans "made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution;" (Government-backed Loans) and (ii) "an obligation to repay funds received as an educational benefit, scholarship, or stipend[.]"

20. Section 523(a)(8)(B) excepts from discharge "qualified education loan[s]" and relies on the definition of such loans used in the Internal Revenue Code, which specifies that qualified education loans are incurred: (1) solely to pay for the cost of attendance; (2) at an institution eligible to receive funding under Title IV of the Higher Education Act of 1965 (which includes most accredited post-secondary educational institutions); and (3) while the student attends at least half-time.

21. Thus, when a consumer in bankruptcy has a Government-backed Loan, an obligation to repay a scholarship or stipend, or a qualified education loan, that loan will not be discharged absent a bankruptcy court's determination, typically during an adversary proceeding initiated by the

consumer, that repaying the loan would cause the consumer an undue hardship.

22. By contrast, private student loans that do not meet the definition of "qualified education loan[s]" are not subject to an exception in § 523 and thus, are discharged in bankruptcy without any requirement by the consumer to show an undue hardship. In other words, when a consumer borrows money from a private lender to fund education at a non-Title IV school (e.g., an unaccredited postsecondary school or K-12 school), for less-than-half-time attendance, or for anything besides cost of attendance (e.g., to pay for medical or dental residency or bar exam preparation), that debt is discharged by a bankruptcy court's Order of Discharge, and the consumer is no longer obligated to pay it.

**PHEAA LACKS POLICIES TO ASSESS IF STUDENT LOANS ARE DISCHARGED AND COLLECTS DISCHARGED DEBT**

23. PHEAA services private student loans through its American Education Services (AES) business line.

24. Loan owners compensate AES for its work servicing their private student loans. For at least one loan owner, AES is compensated each month based on the ending principal balance of the loans it services. For other loan owners, AES is compensated monthly for each loan it services, with the compensation rate based on the repayment status of the

7

loan.

25. AES services both "qualified education loans," as defined by the Internal Revenue Code, and private student loans that are not qualified education loans (non-qualified education loans).

26. AES does not track or categorize—and lacks policies and procedures to determine—whether the private student loans it services are qualified or non-qualified education loans.

27. When AES receives notice that a borrower has filed for bankruptcy, AES suspends its collection efforts toward that borrower during the bankruptcy.

28. After an Order of Discharge is entered by the bankruptcy court, AES's default practice is to treat all private student loans as excepted from discharge and therefore, to resume normal servicing and collection, unless the loan owner directs otherwise or the consumer obtains a discharge order for the loan in an adversary proceeding.

29. In the instances in which the bankruptcy matter includes an adversary proceeding—which could result in a discharge based on undue hardship for student debts enumerated in § 523(a)(8) of the Bankruptcy Code—AES's procedures direct its staff to reach out to the legal division or a supervisor as needed for assistance determining whether the loan was

discharged. For loans discharged through an adversary proceeding, AES notifies the loan owner, which provides direction on how to bring the loan balance to zero.

30. AES also uses supplemental lender-specific instructions for its private student loans. Nearly all of these lender-specific instructions provide the same substantive guidance as AES's default procedures: to resume servicing and collection on loans after a bankruptcy unless there is an adversary proceeding.

31. AES's servicing and collection of private student loans includes issuing billing statements, contacting consumers who miss payments, and furnishing to consumer reporting agencies.

32. AES sends template letters to consumers when they exit bankruptcy and their private loans are placed back into repayment status. The template letters to consumers have a "Repayment Summary" that includes the current principal balance, term of repayment, installment amount, and due date.

33. AES sends monthly bills to consumers 21 days before a payment due date, which include the total amount due and a breakdown of the amount, including any amounts past due, the current amount due, and, if late fees are assessed, which due date they correspond to and an

explanation that the fee is assessed if payment is not received for the prior statement.

34. AES routinely furnishes a loan's current balance, account status, amount past due, and payment history to several consumer reporting agencies for inclusion in a consumer report.

35. AES does not have reasonable policies and procedures to accurately furnish information about loans that were discharged in bankruptcy pursuant to an Order of Discharge. As a result, AES furnishes inaccurate information for many private, non-qualified education loans discharged in bankruptcy.

36. Between 2017 and 2021, AES collected or attempted to collect on approximately 7,934 private student loans after a bankruptcy proceeding, at least 177 of which were non-qualified education loans.

37. AES resumed collecting on at least some private, non-qualified education loans discharged by an Order of Discharge issued by a bankruptcy court. As a result, consumers who obtained a discharge paid thousands or tens of thousands of dollars they did not owe because their non-qualified education loan had been discharged.

## **VIOLATIONS OF THE CONSUMER FINANCIAL PROTECTION ACT AND REGULATION V**

38. The Consumer Financial Protection Act (CFPA) provides that it is unlawful for any covered person "to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A). The CFPA grants the Bureau authority to commence a civil action against any person who violates a Federal consumer financial law, such as the CFPA. 12 U.S.C. § 5564(a).

39. The CFPA prohibits a covered person from committing or engaging in any "unfair, deceptive, or abusive act or practice" in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service. 12 U.S.C. §§ 5531, 5536(a)(1)(B).

### **COUNT I - UNFAIR ACTS OR PRACTICES**

40. Plaintiff incorporates and realleges the allegations in Paragraphs 1-37.

41. Under section 1031 of the CFPA, an act or practice is unfair if it causes or is likely to cause substantial injury to consumers that is not

reasonably avoidable by consumers, and such substantial injury is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c).

42. AES engages in unfair acts or practices through its practice of collecting on discharged non-qualified education loans and failing to maintain policies and procedures to assess whether the loans it services are discharged by an Order of Discharge.

43. AES's acts and practices of collecting on discharged non-qualified education loans and failing to maintain policies and procedures cause or are likely to cause substantial financial loss and incorrect furnishing to nationwide consumer reporting agencies reflecting balances not owed.

44. AES's acts and practices of collecting on discharged non-qualified education loans and failing to maintain policies and procedures cause or are likely to cause significant monetary injury to consumers who make payments on loans they no longer owe, and who may be unaware the debt was discharged.

45. Even if consumers do not continue to pay, they cannot avoid AES's further collection attempts or its furnishing inaccurate credit

information to consumer reporting agencies, which may cause negative information to appear on their credit reports or potential default.

46. These injuries to consumers are not reasonably avoidable because consumers have no ability to choose a different loan servicer and have no control over their servicer's collection or furnishing practices. Consumers cannot anticipate or control that AES would unlawfully try to collect on discharged debt or lack policies and procedures to identify non-qualified education loans discharged in bankruptcy.

47. These injuries to consumers are not outweighed by countervailing benefits to consumers or to competition. There is no benefit to consumers to pay or receive collection notices for debts they do not owe. Nor is there a countervailing benefit to competition or to the market as a whole when AES collects on discharged debts.

48. Therefore, PHEAA engages in unfair acts or practices in violation of sections 1031 and 1036 of the CFPA. 12 U.S.C. §§ 5531(c), 5536(a)(1)(B).

## COUNT II - ABUSIVE ACTS OR PRACTICES

49. Plaintiff incorporates and realleges the allegations in Paragraphs 1-37.

50. Under section 1031 of the CFPA, an act or practice is abusive if it takes unreasonable advantage of the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service. 12 U.S.C. § 5531(d)(2)(B).

51. AES engages in abusive acts or practices through its practice of collecting on discharged non-qualified education loans and failing to maintain policies and procedures to assess whether the loans it services are discharged by an Order of Discharge.

52. AES's acts and practices of collecting on discharged non-qualified education loans and failing to maintain policies and procedures take unreasonable advantage of the inability of consumers to protect their interests in using their private student loans because they deprive consumers of their legal rights to avoid collection of a loan discharged in bankruptcy. Meanwhile, AES is compensated for its continued servicing of these loans after discharge.

53. Consumers whose non-qualified educational loans are serviced by AES have an inability to protect their interests because they cannot choose their loan servicer and have no control over its collection practices.

54. Consumers have no reason to expect that AES will collect on debt that is discharged in bankruptcy. Once AES seeks to collect this

discharged debt, consumers have no ability to stop those collection attempts unless they seek a court order.

55. Therefore, PHEAA engages in abusive acts or practices in violation of sections 1031 and 1036 of the CFPA. 12 U.S.C. §§ 5531(d)(2)(B), 5536(a)(1)(B).

### COUNT III - DECEPTIVE ACTS OR PRACTICES

56. Plaintiff incorporates and realleges the allegations in Paragraphs 1-37.

57. AES's template communications to consumers exiting bankruptcy with an Order of Discharge that describe a new repayment schedule, and AES's resumption of normal servicing activities, represent expressly or impliedly that consumers have an obligation to repay loan amounts that, in fact, consumers with non-qualified education loans are no longer obligated to pay because the loans have been discharged.

58. AES made misrepresentations to consumers with non-qualified education loans that they were required to repay discharged loans by sending repayment schedule letters and billing statements.

59. These misrepresentations, actions, and omissions were material and likely to mislead consumers acting reasonably.

60. The misrepresentations, actions, and omissions of PHEAA constitute deceptive acts or practices in violation of 12 U.S.C. § 5536(a)(1)(B).

## COUNT IV - VIOLATION OF REGULATION V

61. Plaintiff incorporates and realleges the allegations in Paragraphs 1-37.

62. The Fair Credit Reporting Act (FCRA) requires the Bureau to prescribe regulations requiring each person that furnishes information to a consumer reporting agency to establish reasonable policies and procedures regarding the accuracy and integrity of the information furnished. 15 U.S.C. § 1681s-2(e)(1)(B). Regulation V implements the FCRA, 15 U.S.C. §§ 1681, *et seq*.

63. Regulation V imposes certain requirements on persons or entities that furnish consumer information to consumer reporting agencies for inclusion in consumer reports. 12 C.F.R. §§ 1022.40-43.

64. Regulation V requires a furnisher to "establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency." 12 C.F.R. § 1022.42(a). "The policies and

16

procedures must be appropriate to the nature, size, complexity, and scope of [the] furnisher's activities." *Id.*

65. As a student loan servicer, AES routinely furnishes information about student loan borrowers' loan performance to one or more consumer reporting agencies for inclusion in a consumer report and is therefore a "furnisher" under Regulation V. 12 C.F.R. § 1022.41(c).

66. AES failed to establish and implement reasonable written policies and procedures, appropriate to the nature, size, complexity, and scope of AES's furnishing activities, regarding the accuracy and integrity of information that it furnishes regarding borrowers whose non-qualified education loans had been discharged in bankruptcy.

67. Therefore, PHEAA violated Regulation V. 12 C.F.R. § 1022.42.

### COUNT V - VIOLATION OF THE CFPA BASED ON VIOLATION OF REGULATION V

68. Plaintiff incorporates and realleges the allegations in Paragraphs 1-37.

69. The CFPA defines "Federal consumer financial law" to include most provisions of FCRA's implementing regulation, Regulation V. 12 U.S.C. § 5481(12)(F), (14).

70. Because PHEAA is a covered person that violated Regulation V, PHEAA offered or provided a consumer financial product or service not in

conformity with Federal consumer financial law, which is a violation of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## THIS COURT'S POWER TO GRANT RELIEF

71.  The CFPA empowers this Court to grant any appropriate legal or equitable relief including, without limitation, a permanent or temporary injunction, rescission or reformation of contracts, the refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, payments of damages or other monetary relief, limits on the activities or functions of Defendant, and civil money penalties. 12 U.S.C. § 5565(a)(2). In addition, the CFPB may recover its costs in connection with the action, if it is the prevailing party. 12 U.S.C. § 5565(b).

## DEMAND FOR RELIEF

72.  Wherefore, the Bureau requests that the Court:

   a.  Permanently enjoin PHEAA from committing future violations of the CFPA and Regulation V;

   b.  Award such relief as the Court finds necessary to redress injury to consumers resulting from PHEAA's violations of the CFPA and Regulation V, including, but not limited to:

   i. Retrospective injunctive relief;

   ii. Rescission or reformation of contracts, the refund of moneys

      paid, restitution, disgorgement or compensation for unjust enrichment, and payment of damages or other monetary relief;

c.   Award the Bureau civil money penalties; and

d.   Award the Bureau the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: May 31, 2024

                Respectfully submitted,

                Eric Halperin
                *Enforcement Director*

                Deborah Morris
                *Deputy Enforcement Director*

                Rebeccah Bower
                *Assistant Deputy Enforcement Director*

                ____/s/ Adrienne Warrell_____
                Adrienne Warrell (NY 5361092)
                (202) 435-7189
                Adrienne.Warrell@cfpb.gov

                Elizabeth A. Homan (VA 87637)
                (202) 365-6178
                Elizabeth.Homan@cfpb.gov

Emily Holness (NY 4947941)
(202) 435-7841
Emily.Holness@cfpb.gov

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722

For the Consumer Financial Protection Bureau