**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,<br><br>Defendant. | Civil Action No. 1:24-cv-00896-CCC<br><br>(Judge Conner) |

**PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU'S OPPOSITION TO DEFENDANT PHEAA'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 3

A. Consumers are not obligated to pay private student loans discharged in bankruptcy proceedings. ........ 4

B. PHEAA collects on and furnishes inaccurate information about debts not owed. ........ 5

STATEMENT OF QUESTIONS INVOLVED ........ 7

ARGUMENT ........ 7

I. The Bureau has stated claims for violations of the CFPA and Regulation V. ........ 7

A. The Complaint states a claim for unfairness in violation of the CFPA. ........ 8

B. The Complaint states a claim for abusiveness in violation of the CFPA. ........ 13

C. The Complaint states a claim for deception in violation of the CFPA. ........ 15

D. The Complaint states a claim for violation of Regulation V. ........ 17

E. PHEAA had fair notice that its conduct may be covered by the CFPA. ........ 22

II. The Bankruptcy Code does not shield PHEAA from liability. ........ 28

A. PHEAA's alleged conduct violates the CFPA and Regulation V even if it also violates the Bankruptcy Code. ........ 28

B. The Bureau has authority to address the CFPA and Regulation V violations alleged here. ........ 32

III. The Bureau is not required to join lenders in this enforcement action. ........ 36

A. The Bureau properly exercised its discretion in suing PHEAA for its unlawful conduct. ........ 38

B. PHEAA fails to identify any lenders that it contends would be necessary parties ........ 39

CONCLUSION ........ 44

# TABLE OF AUTHORITIES

**Cases**

*Am. Fin. Servs. Ass'n v. FTC*,
767 F.2d 957 (D.C. Cir. 1985) ........ 8

*Am. Gen. Life & Acc. Ins. Co. v. Wood*,
429 F.3d 83 (4th Cir.2005) ........ 37

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
844 F.2d 1050 (3d. Cir. 1988) ........ 39

*Brown v. Transworld Sys., Inc.*,
73 F.4th 1030 (9th Cir. 2023) ........ 31

*CFPB v. CashCall, Inc.*,
35 F.4th 734 (9th Cir. 2022) ........ 16, 34

*CFPB v. Chou Team Realty LLC*,
No. SACV 20-43 JVS, 2020 WL 4873529 (C.D. Cal. June 3, 2020) ........ 38

*CFPB v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) ........ 8

*CFPB v. ITT Educ. Servs., Inc.*,
219 F. Supp. 3d 878 (S.D. Ind. 2015) ........ 8, 14, 26

*CFPB v. Manseth*,
No. 22-CV-29-LJV, Slip Op., 2023 WL 5400235 (W.D.N.Y. Aug 22, 2023) ........ 26

*CFPB v. Navient Corp.*,
No. 3:17-CV-101, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017) ........ passim

*CFPB v. NDG Fin. Corp.*,
No. 15-5211, 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016) ........ 16

*CFPB v. Ocwen Fin. Corp.*,
No. 17-80495-CIV, 2019 WL 13203853 (S.D. Fla. Sept. 5, 2019) ........ 26

*CFPB v. RD Legal Funding, LLC*,
332 F. Supp. 3d 729 (S.D.N.Y. 2018) ........ 34

*CFPB v. Think Fin., LLC*,
No. CV-17-127-GF-BMM, 2018 WL 3707911 (D. Mont. Aug. 3, 2018) ........ 16, 34

*Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*,
17 F.3d 1292 (10th Cir. 1994) ........ 37

*Commonwealth v. PHEAA*,
No. 1784CV02682, 2018 WL 1137520 (Mass. Super. Ct. Mar. 1, 2018) ........ 44

*Cortez v. Trans Union, LLC*,
617 F.3d 688 (3d. Cir. 2010) .......... 18

*Davis v. HSBC Bank Nev.*,
691 F.3d 1152 (9th Cir. 2012) .......... 12

*Davis v. KeyBank N.A.*,
No. 2:22-CV-01645, 2024 WL 3106830 (D. Nev. June 21, 2024) .......... 32

*Dec on behalf of Appolyon, Inc. v. McLean*,
No. 1:24-CV-83, 2024 WL 3597113 (M.D. Pa. July 30, 2024) .......... 41

*Denan v. Trans Union LLC*,
959 F.3d 290 (7th Cir. 2020) .......... 21

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*,
635 F.3d 87 (3d Cir. 2011) .......... 37, 39

*Engel v. R.J. Reynolds Tobacco Co.*,
No. 2:17-CV-618, 2017 WL 2119805 (E.D. Cal. May 16, 2017) .......... 40

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia*, LLC,
80 F.4th 223 (3d Cir. 2023) .......... 42

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .......... 22

*Fleisher v. Standard Ins. Co.*,
679 F.3d 116 (3d Cir. 2012) .......... 8

*FTC v. Com. Planet, Inc.*,
No. 09-01324-CJC, 2010 WL 11673795 (C.D. Cal. July 6, 2010) .......... 38

*FTC v. Direct Benefits Grp., LLC*,
No. 6:11-CV-1186, 2013 WL 3771322 (M.D. Fla. July 18, 2013) .......... 11

*FTC v. Elec. Payment Sols. of Am. Inc.*,
482 F. Supp. 3d 921 (D. Ariz. 2020) .......... 11, 12

*FTC v. Inc21.com Corp.*,
745 F. Supp. 2d 975 (N.D. Cal. 2010) .......... 11, 12

*FTC v. Neovi, Inc.*,
604 F.3d 1150 (9th Cir. 2010) .......... 11

*FTC v. Wyndham Worldwide Corp.*,
799 F.3d 236 (3d Cir. 2015) .......... passim

*Garfield v. Ocwen Loan Servicing, LLC*,
811 F.3d 86 (2d Cir. 2016) .......... 30, 35

*Gen. Refractories Co. v. First State Ins. Co.*,
500 F.3d 306 (3d Cir. 2007) ........ 37

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) ........ 21

*Greenwich Life Settlements, Inc. v. ViaSource Funding Gr., LLC*,
742 F. Supp. 2d 446 (S.D.N.Y. 2010) ........ 39

*Gross v. CitiMortgage,* Inc.,
33 F.4th 1246 (9th Cir. 2022) ........ 18

*Heckler v. Chaney*,
470 821 (1985) ........ 38

*Holden v. Holiday Inn Club Vacations Inc.*,
98 F.4th 1359 (11th Cir. 2024) ........ 19, 20

*Horsch v. Wells Fargo Home Mortg.*,
94 F. Supp. 3d 665 (E.D. Pa. 2015) ........ 18

*Illinois v. Alta Colleges, Inc.*,
No. 14 C 3786, 2014 WL 4377579 (Sept. 4, 2014) ........ 26

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
534 U.S. 124 (2001) ........ 29

*Johnson v. Home State Bank*,
501 U.S. 78 (1991) ........ 42

*Karem v. Trump*,
960 F.3d 656 (D.C. Cir. 2020) ........ 23

*Kingdomware Techs., Inc. v. U.S.*,
579 U.S. 162 (2016) ........ 38

*Koropoulous v. Credit Bureau, Inc.*,
734 F.2d 37 (D.C. Cir. 1984) ........ 20

*Linskey v. Guariglia*,
No. 3:11–2059, 2012 WL 1268913 (M.D. Pa. April 16, 2012) ........ 37

*Losch v. Nationstar Mortg. LLC*,
995 F.3d 937 (11th Cir. 2021) ........ 18

*Mader v. Experian Info. Sols. Inc.*,
56 F.4th 264 (2d Cir. 2023) ........ 20, 21

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010) ........ 10

*Nigro v. PHEAA*,
No. 1:19-cv-02000, 2020 WL 5369980 (M.D. Pa. Sept. 8, 2020) .... 43

*Orkin Exterminating Co. v. FTC*,
849 F.2d 1354 (11th Cir. 1988) .... 9

*Pa. Game Comm. v. Thomas E. Proctor Heirs Tr.*,
No. 1:12-cv-1567, 2017 WL 4275427 (M.D. Pa. Aug. 11, 2017) .... 40

*Pennsylvania v. Think Fin., Inc.*,
No. 14-CV-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016) .... 34

*PHH Corp. v. CFPB*,
839 F.3d 1 (D.C. Cir. 2016) .... 26, 27

*Pittsburgh Logistics Sys., In. v. C.R. England, Inc.*,
669 F. Supp. 2d 613 (W.D. Pa. 2009) .... 37

*Poling v. K. Hovnanian Enters.*,
99 F. Supp. 2d 502 (D.N.J. 2000) .... 40

*Polygon U.S. Corp. v. Diversified Info. Techs.*,
No. 3:CV-12-0923, 2012 WL 5379168 (M.D. Pa. Oct. 31, 2012) .... 41

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
390 U.S. 102 (1968) .... 37

*Randolph v. IMBS, Inc.*,
368 F.3d 726 (7th Cir. 2004) .... 29, 31, 32, 35

*Seamans v. Temple Univ.*,
744 F.3d 853 (3d Cir. 2014) .... 18

*SEC v. Laura*,
No. 18-CV-5075, 2020 WL 1434114 (E.D.N.Y. March 24, 2020) .... 38

*Simon v. FIA Card Servs., N.A.*,
732 F.3d 259 (3d Cir. 2013) .... 29, 32, 34, 35

*Sugar Bowl Ranch, LLC v. SWN Prod. Co., LLC*,
No. 4:22-cv-00287, 2022 WL 4472452 (M.D. Pa. Sept. 26, 2022) .... 41

*Townsend v. M&T Mortg. Corp.*,
No. 3:09cv1866, 2010 WL 2573825 (M.D. Pa. June 23, 2010) .... 32

*United States v. AMC Ent., Inc.*,
549 F.3d 760 (9th Cir. 2008) .... 23

*United States v. Harra*,
985 F.3d 196 (3d Cir. 2021) .... 23

*Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982) ........ 22

*Wallace v. Mathias*,
No. 4:12-cv-3011, 2012 WL 2870708 (D. Neb. July 10, 2012) ........ 40

*Walls v. Wells Fargo Bank, N.A.*,
276 F.3d 502 (9th Cir. 2002) ........ 31

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
746 F.3d 1008 (11th Cir. 2014) ........ 41

*Zehnder v. FDS Bank*,
No. 3:09-CV-1865, 2010 WL 11575034 (M.D. Pa. March 18, 2010) ........ 32

**Statutes**

11 U.S.C. § 523(a)(8) ........ 1, 4, 10, 26, 27

11 U.S.C. § 524(a) ........ 10, 42

12 U.S.C § 5481(12) ........ 33

12 U.S.C § 5481(14) ........ 32, 33

12 U.S.C. § § 5491 et seq. ........ passim

12 U.S.C. § 5531 ........ 1

12 U.S.C. § 5531(c) ........ 8

12 U.S.C. § 5531(d) ........ 14

12 U.S.C. § 5536(a) ........ 1, 8

12 U.S.C. § 5564 ........ 32, 38

15 U.S.C. § 1681*o* ........ 20

15 U.S.C. § 1681s ........ 20

15 U.S.C. § 1681s-2(e) ........ 18

15 U.S.C. § 45(a) ........ 8, 23

26 U.S.C. § 221(d) ........ 5

**Other Authorities**

5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1359 Motions to Dismiss—Failure to Join a Party Under Rule 19, (3d ed. 2004; June 2024 update) ........ 37

Webster's Third New Int'l Dictionary 2331 (3d ed. 1993) .............................................. 14

**Rules**

Fed. R. Civ. P. 12 .............................................................................................passim

Fed. R. Civ. P. 15(a) .............................................................................................44

Fed. R. Civ. P. 19 .............................................................................................passim

**Regulations**

12 C.F.R. § 1022.41(a) .............................................................................................18, 19

12 C.F.R. § 1022.42 .............................................................................................passim

12 C.F.R. pt. 1022, app. E ............................................................................................. 18

16 C.F.R. pt. 600 app. § 607(b) ............................................................................................. 18

# **INTRODUCTION**

The Bureau alleges that PHEAA, doing business as American Education Services or AES, is engaging in unfair, abusive, and deceptive acts or practices in its servicing and collection of private student loans that are no longer owed, in violation of the Consumer Financial Protection Act (CFPA), 12 U.S.C. §§ 5531, 5536(a)(1)(B), and failed to establish reasonable policies and procedures for furnishing information about those loans, resulting in its furnishing inaccurate information to consumer reporting agencies, in violation of the Fair Credit Reporting Act's implementing Regulation V, 12 C.F.R. § 1022.42.

What is most telling about PHEAA's motion to dismiss is that it does not dispute that *some* private student loans are dischargeable in a bankruptcy proceeding without an adversary proceeding under Section 523(a)(8) of the Bankruptcy Code, and thus are discharged automatically in a standard Discharge Order. Instead, PHEAA argues that identifying such loans defies "categorical line-drawing" (Def.'s Br. 9, ECF No. 29) and is "fact-intensive" (*id.* 26). But PHEAA's quibbles about how best to identify discharged debt do not shield PHEAA from liability under the CFPA for collecting on debt that is not owed or Regulation V for failing to develop

reasonable procedures to furnish accurate information about discharged debt.

PHEAA seeks dismissal of the CFPA claims under Rule 12(b)(6), but the Complaint has made plausible allegations of unfair, abusive, and deceptive conduct. PHEAA also seeks dismissal of the Bureau's Regulation V claim, but its arguments misstate the applicable law. PHEAA's fair-notice argument also fails: PHEAA again misstates the applicable level of notice required, and easily could have reasonably foreseen that its conduct would fall within the scope of the CFPA.

PHEAA invokes Federal Rule of Civil Procedure 19 for an alleged failure to join the lenders under Rule 12(b)(7). That argument ignores the Bureau's discretion as a law enforcement agency to decide whom to sue when it vindicates the public interest, and PHEAA fails to satisfy its burden under Rule 19 regardless.

Finally, PHEAA seeks dismissal of this case based on its mischaracterization of the Bureau as usurping authority to enforce the Bankruptcy Code. This action does no such thing. Rather, it follows the well-established principle that demanding payments on debts that consumers do not actually owe (in this case, because they have been discharged in bankruptcy) violates the CFPA's prohibition on unfair, abusive, and

deceptive practices. The Bureau alleges that PHEAA lacks policies and procedures to properly assess whether consumers who receive a discharge in bankruptcy continue to owe certain private student loans, and as a result, seeks to collects on discharged debt that consumers no longer owe, in violation of the CFPA, and reports inaccurate information to credit reporting agencies, in violation of Regulation V. PHEAA's lengthy argument that the Bureau has no authority to enforce the Bankruptcy Code is a red herring because the Bureau seeks to enforce—and has plausibly alleged claims under—the CFPA and Regulation V. The Court should deny PHEAA's motion entirely.

## BACKGROUND

The Bureau's Complaint alleges that PHEAA, doing business as AES, has engaged in unfair, abusive, and deceptive acts and practices by collecting on discharged loans and failing to maintain policies and procedures to assess whether the loans it services are discharged in bankruptcy, and violated Regulation V's requirement that it maintain reasonable policies and procedures to ensure that the information it furnishes to credit reporting agencies is accurate. (Compl. ¶¶ 3–8, 41–67, ECF No. 1.)

### A. Consumers are not obligated to pay private student loans discharged in bankruptcy proceedings.

Bankruptcy offers debtors a financial fresh start from burdensome debts through a discharge. (*Id.* ¶ 1.) In general, a bankruptcy court's standard Order of Discharge releases debtors from personal liability for all debts, absent some exception. (*Id.*) As relevant here, Section 523(a)(8) of the Bankruptcy Code excepts most—but not all—educational benefits or loans from a general bankruptcy discharge. (*Id.* ¶ 2.)

Section 523(a)(8)(A) and (B) of the Bankruptcy Code define those student loans excepted from discharge.[1] (*Id.* ¶¶ 18–22.) Under Section 523(a)(8)(A), loans are excepted from discharge if they are (i) "made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a government unit or nonprofit institution"[2] or (ii) "an education benefit." (*Id.* ¶ 19.) For private student loans, which are not subject to either prong of the Section 523(a)(8)(A) exception, whether they are excepted from discharge depends on whether they meet Section

[1] If a debt falls within one of the categories in Section 523(a)(8), the debt is nondischargeable unless the debtor establishes that excepting the debt from discharge would impose an undue hardship on the debtor and the debtor's dependents. (Compl. ¶ 2.)

[2] The Complaint uses shorthand to refer to loans under Section 523(a)(8)(A)(i) as Government-backed Loans. Such shorthand does not limit the operation of Section 523(a)(8)(A)(i) so as to exclude the exception for programs funded by a "nonprofit institution."

523(a)(8)(B)'s definition of "qualified education loan[s]" (as defined in the Internal Revenue Code[3]). (*Id.* ¶ 20.) Qualified education loans are incurred solely to pay for the cost of attendance, at an institution eligible to receive funding under Title IV of the Higher Education Act of 1965, and while the student attends at least half-time. (*Id.*) Loans to fund education at a non-Title IV school (for example, a school for kindergarten through grade 12), attendance for less than half-time, or anything besides the cost of attendance are not "qualified education loan[s]." (*Id.* ¶¶ 20, 22.)

If no statutory exception to discharge under Section 523(a)(8)(A) or (B) applies, the private student loan is discharged by a bankruptcy court's standard Order of Discharge, and the consumer is no longer obligated to pay it. (*Id.* ¶¶ 15–17, 20, 22.) This action is concerned with those private student loans that are not excepted from discharge under Section 523(a)(8)(A) or (B), and thus are discharged without the need for an adversary proceeding or showing of undue hardship. (*Id.* ¶ 22.)

**B. PHEAA collects on and furnishes inaccurate information about debts not owed.**

PHEAA, through AES, services both "qualified education loan[s]" and private student loans that are not "qualified education loan[s]" (non-

[3] "Qualified education loan" is defined in the Internal Revenue Code at 26 U.S.C. § 221(d)(1).

qualified education loans). (*Id.* ¶ 25.) However, PHEAA lacks policies and procedures to identify whether or not the private student loans it services are "qualified education loans." (*Id.* ¶ 26.) Instead, PHEAA's practice is to treat all private student loans as excepted from discharge and resume servicing and collection after the bankruptcy court enters an Order of Discharge, unless the consumer obtains a discharge order specifically for the loan in an adversary proceeding or the loan owner directs otherwise. (*Id.* ¶¶ 28–30.)

PHEAA's normal servicing and collection involves sending monthly bills and repayment letters to consumers and furnishing loan information to consumer reporting agencies. (*Id.* ¶¶ 31–34.) PHEAA does not have reasonable policies and procedures to accurately furnish information about private, non-qualified education loans that were discharged in bankruptcy pursuant to an Order of Discharge. (*Id.* ¶ 35.)

Between 2017 and 2021, PHEAA collected or attempted to collect on approximately 7,934 private student loans after a bankruptcy proceeding, at least 177 of which were non-qualified education loans. (*Id.* ¶¶ 36–37). PHEAA has no policy or procedure in place to identify whether these loans were qualified education loans subject to a discharge exception. (*Id.* ¶ 26.) At least some consumers had private student loans that were non-qualified education loans that had been discharged (*i.e.,* debts for which the debtor is

no longer legally required to pay and PHEAA was not legally entitled to collect), yet PHEAA, through AES, collected thousands of dollars from these consumers that were not owed. (*Id.* ¶ 37.)

**STATEMENT OF QUESTIONS INVOLVED**

1. In alleging that PHEAA sought to and did collect on debts that consumers did not owe, and failed to maintain reasonable policies and procedures to accurately furnish information about private, non-qualified education loans that were discharged in bankruptcy, has the Bureau stated claims under the CFPA and Regulation V?
2. Does the Bankruptcy Code shield PHEAA from liability under the CFPA and Regulation V for collecting on debts no longer owed and failing to maintain reasonable policies and procedures to assess whether loans have been discharged?
3. In bringing an action against a servicer for seeking to collect and collecting on debts consumers did not owe, is the Bureau required to bring CFPA claims against lenders also?

**ARGUMENT**

## I. The Bureau has stated claims for violations of the CFPA and Regulation V.

When evaluating a motion under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (internal quotation marks omitted). To survive a motion to dismiss, the complaint must contain sufficient factual allegations, taken as true, to "state a claim to relief that is plausible on its face." *Id.* The Bureau's Complaint meets this standard.

### A. The Complaint states a claim for unfairness in violation of the CFPA.

An act or practice is unfair in violation of the CFPA if it (1) causes or is likely to cause substantial injury to consumers, (2) which is not reasonably avoidable by consumers, and (3) such substantial injury is not outweighed by countervailing benefits to consumers or to competition. *See* 12 U.S.C. § 5531(c)(1).[4] Substantial injury typically involves non-trivial monetary harm to a consumer. *See Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 972 (D.C. Cir. 1985). But unfairness claims can also be based upon "likely rather than actual injury," and therefore, "conduct can be unfair before actual injury occurs."

4 Because the term "unfair . . . act or practice" under the CFPA, 12 U.S.C. § 5536(a)(1)(B), is similar to the term "unfair . . . acts or practices" under the FTC Act, 15 U.S.C. § 45(a)(1), courts have used interpretations of the FTC Act, including § 45(n), to guide interpretation of CFPA unfairness. *See CFPB v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530, at *21 n.10 (M.D. Pa. Aug. 4, 2017); *see also CFPB v. Gordon*, 819 F.3d 1179, 1193 n.7 (9th Cir. 2016); *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 913 (S.D. Ind. 2015).

*FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 246 (3d Cir. 2015). Injury is reasonably avoidable if consumers have reason to anticipate the impending harm and the means to avoid it, or if consumers are aware of, and reasonably capable of, pursuing potential avenues to mitigate the injury after the fact. *See Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988); *Navient*, 2017 WL 3380530, at *21 (M.D. Pa. Aug. 4, 2017).

PHEAA disputes only the "reasonably avoidable" prong of the unfairness claim; it does not dispute that the Bureau adequately pleads that PHEAA's actions cause or are likely to cause substantial injury that is not outweighed by countervailing benefit to consumers or competition. (Compl. ¶¶ 42–44, 47.) And even as to the "reasonably avoidable" prong, PHEAA does not dispute that the Bureau adequately pleads that consumers' injuries are not reasonably avoidable *before* they are incurred because consumers have no ability to choose their loan servicer, no control over PHEAA's collection or furnishing practices, and no reason to anticipate that PHEAA would unlawfully try to collect on discharged debt. (*Id.* ¶ 46.) These consumers may be unaware their debts were discharged. (*Id.* ¶ 44.) Instead, PHEAA argues only that these substantial injuries to consumers are reasonably avoidable because consumers can mitigate any injuries *after* the fact—that is, after PHEAA has begun attempting to collect on discharged debts.

First, PHEAA's dispute about the availability of post hoc mitigation raises unavoidable questions of fact and is not appropriate on a motion to dismiss. PHEAA attempts to rely on facts not before the Court, citing to cases decided at the summary-judgment phase (Def.'s Br. 36–37, describing consumers' purportedly "ample options" to mitigate harm and the Bureau's prior publications). *See Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010); *Navient*, 2017 WL 3380530, at *21 (M.D. Pa. Aug. 4, 2017) (rejecting student-loan servicer's argument that consumers could reasonably avoid harm when doing so "would require this Court to rule, as a matter of law," on "facts not before the Court at the pleading stage").

Second, even if the mitigation PHEAA describes was both available and appropriate to consider at the pleading stage, such mitigation would not make consumers' injuries reasonably avoidable as a matter of law. PHEAA argues that a consumer's injury is reasonably avoidable, but only if she takes action in her bankruptcy proceeding—initiating an adversary proceeding, reopening a bankruptcy case, filing for contempt, or requesting a judicial finding of dischargeability (Def.'s Br. 36); notably, however, the Bankruptcy Code does not require a consumer to take any of the steps suggested by PHEAA to prevent unlawful collection of non-excepted, discharged debt. *See* 11 U.S.C. §§ 523(a)(8), 524(a). Moreover, the mitigation methods suggested

by PHEAA require substantial time, effort, and money (especially when seeking the assistance of an attorney), since they require the intervention of a court. That investment of "time, trouble, aggravation, and money" is itself an unavoidable injury. *See FTC v. Elec. Payment Sols. of Am. Inc.*, 482 F. Supp. 3d 921, 931 (D. Ariz. 2020) (quoting *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010), *as amended* No. 09-55093, 2010 WL 2365956 (9th Cir. June 15, 2010)). Plus, in the meantime, consumers are forced to pay money they do not owe or risk negative credit reporting and default. (*See* Compl. ¶¶ 5, 45–46.)

Thus, even if individual consumers are eventually able to obtain refunds of money unlawfully collected or reversal of unlawful charges, they may nonetheless suffer substantial injuries that are not fully mitigated, and thus are not reasonably avoidable. *Neovi*, 604 F.3d at 1158; *accord Elec. Payment Sols. of Am. Inc.*, 482 F. Supp. 3d at 931; *FTC v. Direct Benefits Grp., LLC*, No. 6:11-CV-1186, 2013 WL 3771322, at *14 (M.D. Fla. July 18, 2013); *FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1005 (N.D. Cal. 2010), aff'd, 475 F. App'x 106 (9th Cir. 2012). Moreover, consumers cannot "mitigate the period of time during which they lost access to and use of the funds taken . . . ." *Neovi*, 604 F.3d at 1158.

Furthermore, many consumers may not pursue these avenues in court because they may be unaware their debts are discharged. (*See* Compl. ¶ 44.) Post hoc mitigation methods cannot make any injury reasonably avoidable when consumers may be unaware of the injury. *See Neovi*, 604 F.3d at 1158 (noting likelihood that some consumers never noticed unauthorized withdrawals); *Elec. Payment Sols.*, 482 F. Supp. 3d at 931 ("the charge back system was not a reasonable mechanism by which consumers could avoid loss as it is likely that some consumers never noticed fraud on their credit card statements"); *Inc21.com*, 745 F. Supp. 2d at 1004–05 (granting summary judgment to FTC where only five percent of customers noticed unauthorized charges); *see also Navient*, 2017 WL 3380530, at *21 (M.D. Pa. Aug. 4, 2017) ("An injury is reasonably avoidable…if consumers are *aware of*, and reasonably capable of, pursuing potential avenues to mitigate the injury after the fact.") (emphasis added).

PHEAA's reliance on *Davis v. HSBC Bank Nev.,* 691 F.3d 1152, 1169 (9th Cir. 2012), is misplaced. In *Davis*, the court concluded that disclosures made the injury reasonably avoidable *before* the consumer suffered any harm, and the mitigation effort mentioned in that case—closing a credit card account to receive a full refund—was significantly less costly and time intensive than what PHEAA itself suggests would be required here. 691 F.3d

at 1169. If consumers realize their debts have been discharged—which many may not—PHEAA suggests that consumers could mitigate harm from its collection efforts by "notify[ing] PHEAA (or their lender) of a Discharge Order" (Def.'s Br. 36), but such an effort would be futile given PHEAA's practice of treating all private student loans as excepted from discharge absent the existence of an adversary proceeding or express direction from the loan owner (*see* Compl. ¶¶ 28–30). Thus, consumers cannot stop PHEAA's unlawful collection attempts on discharged debt unless they seek a court order (*see id.* ¶¶ 42–46, 54). Because of the significant time, effort, and costs to consumers, along with loss of access to potentially significant funds in the interim, the Bureau has plausibly alleged that consumers' substantial injury cannot be reasonably avoided. *Cf. Wyndham*, 799 F.3d at 246 (upholding denial of motion to dismiss unfairness claim where FTC pleaded consumers suffered injury after a data breach and expended time and money mitigating subsequent harm).

### B. The Complaint states a claim for abusiveness in violation of the CFPA.

The Bureau has also plausibly alleged that PHEAA's failure to maintain policies and procedures to assess whether the loans it services are discharged, and its practice of collecting discharged debt, "takes unreasonable advantage of . . . [the] inability of the consumer to protect the

interests of the consumer in selecting or using a consumer financial product or service." 12 U.S.C. § 5531(d)(2)(B). To "take advantage of" is generally "to make use of for one's own benefit" to "use to advantage," or to "profit by[.]" *See CFPB v. ITT Educ. Servs.*, 219 F. Supp. 3d 878, 918 (S.D. Ind. 2015) (citing Webster's Third New Int'l Dictionary 2331 (3d ed. 1993)). The inability of a consumer to protect her interests "refers to oppressive circumstances—when a consumer is unable to protect herself not in absolute terms, but *relative to* the excessively stronger position of the defendant." *Id.* at 919 (emphasis in original).

The Bureau has adequately alleged that PHEAA takes unreasonable advantage of consumers when it demands payments from consumers for loan balances they do not owe. (*See* Compl. ¶¶ 51–52.) This practice maximizes PHEAA's own compensation because PHEAA earns revenue for continuing to service non-qualified education loans even after they have been discharged in bankruptcy. (*Id.* ¶ 24.) Consumers have an interest in accurate servicing of their loans in accordance with applicable law, including cessation of collection attempts when those loans have been discharged in bankruptcy. (*Id.* ¶ 52.) Consumers whose discharged loans are serviced by PHEAA have an inability to protect those interests because they cannot choose their loan servicer and have no reason to expect, or ability to stop,

PHEAA's efforts to collect on discharged debt, unless they seek a court order. (*Id.* ¶¶ 53–54.)

PHEAA argues that the Bureau's abusiveness claim must be dismissed because consumers can protect their interests to avoid collection of discharged debt by seeking a court order to stop the unlawful collection. (Def.'s Br. 38.) But, as noted above, to the extent PHEAA relies on facts not properly before the Court at this motion to dismiss stage, PHEAA's arguments must fail. More to the point, the availability of post hoc legal recourse does not change the oppressive nature of PHEAA's failure to maintain policies and procedures to assess whether the loans it services are discharged. The mere existence of the *possibility* of remedies in bankruptcy court cannot defeat the Bureau's plausible allegations that PHEAA has engaged in abusive acts and practices by taking unreasonable advantage of consumers' inability to protect their interests relative to PHEAA.

### C. The Complaint states a claim for deception in violation of the CFPA.

PHEAA's collection of discharged debt also constitutes deceptive acts or practices. "[A]n act or practice is deceptive if: (1) 'there is a representation, omission, or practice that,' (2) 'is likely to mislead consumers acting reasonably under the circumstances,' and (3) 'the representation, omission, or practice is material.'" *Navient*, 2017 WL 3380530, at *23 (M.D. Pa. Aug.

4, 2017) (citing *CFPB v. Gordon*, 819 F.3d 1179, 1192–93 (9th Cir. 2016) (applying the deceptive standard used in the FTC Act to the CFPA)).

PHEAA's resumption of servicing activities for discharged loans misrepresented, expressly or impliedly, that consumers had an obligation to repay loan amounts that, in fact, they were no longer obligated to pay because they had been discharged. (Compl. ¶¶ 57–59.) PHEAA misrepresented borrowers' repayment obligations by sending payment schedule letters and billing statements to borrowers exiting bankruptcy. (*Id.* ¶¶ 31–33.) The Bureau has plausibly alleged these misrepresentations were material and likely to mislead reasonable consumers to believe they were still legally obligated to repay. *Cf. CFPB v. Think Fin., LLC*, No. CV-17-127-GF-BMM, 2018 WL 3707911, at *8 (D. Mont. Aug. 3, 2018) ("[M]aterial misrepresentations occurred when Defendants informed consumers, impliedly and explicitly, that they possessed a legal obligation to pay."); *CFPB v. NDG Fin. Corp.*, No. 15-5211, 2016 WL 7188792, at *14 (S.D.N.Y. Dec. 2, 2016) ("It is well-established that falsely representing to a consumer that he or she owes money constitutes making a material misrepresentation.") (internal quotation marks omitted); *CFPB v. CashCall, Inc.*, 2016 WL 4820635, at *10 (C.D. Cal. Aug. 31, 2016), *affirmed by CFPB v. CashCall, Inc.*, 35 F.4th 734, 747 (9th Cir. 2022) (false impression created

by servicing and collecting on loans where payments were not due and owing was likely to mislead consumers acting reasonably under the circumstances).

PHEAA's one-paragraph argument to dismiss the Bureau's deception claim rests entirely on improper grounds—PHEAA's dispute of facts. (Def.'s Br. 38.) The Bureau has plausibly alleged that private, non-qualified education loans are discharged by a standard bankruptcy Order of Discharge. (*See* Compl. ¶¶ 15–22.) In its statement of facts, PHEAA references its disagreement with the Bureau's assertion that these loans are discharged pursuant to a standard Order of Discharge (Def.'s Br. 9–10)—but it does not actually argue the reasoning for this point as a basis for dismissal of the Bureau's claims. Thus, for private, non-qualified education loans, the Bureau has plausibly alleged that PHEAA engaged in deceptive acts or practices by collecting on those loans after discharge.

**D. The Complaint states a claim for violation of Regulation V.**

Regulation V, the Fair Credit Reporting Act's implementing rule, requires furnishers like PHEAA to establish and implement reasonable written policies and procedures regarding the accuracy of the information that they furnish to a consumer reporting agency (CRA). 12 C.F.R.

§ 1022.42(a)-(b).[5] As defined in Regulation V, "[a]ccuracy" means the furnisher "correctly…[r]eflects the terms of and liability for the account", among other requirements, in its reporting to a CRA. 12 C.F.R. § 1022.41(a). The reasonableness of a furnisher's procedures to assure accuracy is normally a question for trial unless the reasonableness is beyond question. *Seamans v. Temple Univ.*, 744 F.3d 853, 865–66 (3d Cir. 2014) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709–10 (3d. Cir. 2010)).

The Bureau has plausibly alleged that PHEAA does not have reasonable policies and procedures to accurately furnish information about private, non-qualified education loans that were discharged in bankruptcy. (Compl. ¶¶ 35, 66–67.) It is inaccurate for a furnisher to report to a CRA that an amount is owed on an account if the account balance has been discharged in bankruptcy. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021); *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d 665, 675 (E.D. Pa. 2015) (citing Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, 16 C.F.R. pt. 600 app. § 607(b)(6) (2010)); *see also Gross v. CitiMortgage,* Inc., 33 F.4th 1246, 1252 (9th Cir. 2022). Indeed, reasonable

---

[5] The FCRA mandates that the Bureau prescribe these regulations for furnishers and establish the accompanying guidelines set forth in the regulatory appendix, 12 C.F.R. pt. 1022, app. E. 15 U.S.C. § 1681s-2(e)(1).

procedures with respect to the accuracy of data explicitly include correctly reflecting the "liability for the account[.]" 12 C.F.R. § 1022.41(a). Here, PHEAA neither furnishes that the account has been discharged nor does it indicate through its reporting that there no longer is a balance owed. (Compl. ¶¶ 35–36). Therefore, PHEAA's default practice to resume pre-discharge furnishing for private student loans after a bankruptcy—without regard for whether they are non-qualified education loans that were discharged—violates its obligation to establish and implement reasonable policies and procedures regarding the accuracy of the information that it furnishes. (*Id.* ¶¶ 15–22, 25–26, 28–30, 34–35, 66–67.)

PHEAA argues that the Bureau's Regulation V claim should be dismissed because a furnisher cannot be liable under the FCRA unless it furnishes information whose inaccuracy is "objectively and readily verifiable". (Def.'s Br. 40, quoting *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024).) This is wrong on several fronts.

First, the Bureau need not establish any inaccuracy at all to establish its claim under Regulation V. The relevant provision requires PHEAA to establish reasonable written policies and procedures regarding the accuracy and integrity of the information it furnishes to consumer reporting agencies. 12 C.F.R. § 1022.42(a). The Bureau adequately alleges that PHEAA violated

that provision by failing to have such reasonable procedures in place. Establishing any particular inaccuracy is not an element of the Bureau's claim. In contending otherwise, PHEAA cites cases that have required consumers to establish an inaccuracy in order to prevail on claims that a furnisher failed to reasonably investigate a dispute or that a CRA failed to follow reasonable procedures to ensure maximum accuracy—different provisions of the FCRA than the one brought here. (*See* Def.'s Br. 39, citing *Holden*, 98 F.4th at 1369; *Mader v. Experian Info. Sols. Inc.,* 56 F.4th 264 (2d Cir. 2023)). But courts require private plaintiffs to show an inaccuracy because they are required to show injury to sustain a claim under 15 U.S.C. § 1681*o*(1). *See Koropoulous v. Credit Bureau, Inc.*, 734 F.2d 37, 39 (D.C. Cir. 1984). Section 1681*o*(1) and the requirement to show injury do not, however, apply to government suits, which are brought under § 1681s (directing the government to enforce violations of the statute using subtitle E of the Consumer Financial Protection Act).

Second, PHEAA also errs to the extent it contends that it has no obligation under Regulation V to maintain reasonable policies to assure the accuracy of information it furnishes if the information's accuracy is not "objectively and readily verifiable." FCRA and Regulation V—which Congress enacted to protect consumers from the serious harms that

inaccurate credit reporting can cause—contain no such limitation. PHEAA's heavy reliance on *Mader v. Experian Information Solutions, Inc.*, is misplaced because *Mader* addresses the standard of "accuracy" applicable to a CRA, not a furnisher like PHEAA. 56 F.4th at 270. "[T]he furnisher of credit information stands in a far better position . . . than a CRA does" to determine whether a debt is owed. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009). Furnishers "assumed the risk and bear the loss of unpaid debt, so they are in a better position to determine the legal validity of a debt." *Denan v. Trans Union LLC*, 959 F.3d 290, 295 (7th Cir. 2020). Indeed, furnishers like PHEAA make legal judgments every day when making decisions about what they can bill consumers for and what debts they can collect. Just as they do that, they must likewise have reasonable policies in place to assure that the information they furnish to CRAs is accurate.

Finally, to the extent PHEAA suggests that it was reasonable as a matter of law for them not to try to assess whether debts had been discharged, that argument fails at the pleading stage. PHEAA suggests that "reasonable" policies and procedures need not include policies to determine whether private educational loans were covered by a bankruptcy discharge. But what is required for policies and procedures regarding accuracy to be

"reasonable" raises questions of fact not appropriately resolved on a motion to dismiss. *See Seamans,* 744 F.3d at 865–66.

### E. PHEAA had fair notice that its conduct may be covered by the CFPA.

The Constitution requires a statute to "provide a person of ordinary intelligence fair notice of what is prohibited." *FCC v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012). The level of required notice for laws imposing civil rather than criminal liability is less demanding, and economic regulation is subject to "a less strict vagueness test". *Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 498–99 (1982); *FTC v. Wyndham Worldwide Corp.*, 799 F. 3d 236, 250–51 (3d Cir. 2015). "The standards are especially lax for civil statutes that regulate economic activities. For those statutes, a party lacks fair notice when the relevant standard is so vague as to be no rule or standard at all." *Wyndham*, 799 F. 3d at 250 (internal citations and quotations omitted). "Fair notice is satisfied here as long as the company can reasonably foresee that a court could construe its conduct as falling within the meaning of the statute." *Id.* at 256.

PHEAA mischaracterizes this suit as an attempt to retroactively impose student loan servicing requirements on it based on a new interpretation of law, which it argues had the effect of denying it fair notice of the Bureau's interpretation of what post-bankruptcy servicing procedures

are required by the CFPA. (Def.'s Br. 34). As a threshold matter, PHEAA misstates the applicable level of notice to which it is entitled. Its citations to *Karem v. Trump,* 960 F.3d 656 (D.C. Cir. 2020), *United States v. AMC Ent., Inc.*, 549 F.3d 760 (9th Cir. 2008), and *United States v. Harra*, 985 F.3d 196 (3d Cir. 2021) are inapposite because those cases do not address the fair-notice standard for civil statutes governing economic activity where—as here—the government seeks no deference to its interpretation. A court in this District rejected a nearly identical fair-notice argument from the student loan servicer Navient, relying on the Third Circuit's decision in *Wyndham*.

In *Wyndham*, the Third Circuit considered whether Wyndham had fair notice that the FTC may consider insufficient cybersecurity practices to be an unfair practice under the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a).[6] *Wyndham,* 799 F.3d at 240. The Third Circuit applied the "less strict" standard of fair notice due for statutes regulating economic activity; no higher standard of "ascertainable certainty" was required because the Court owed no deference to the FTC's interpretation of the FTCA. *Id*. at 254–55. Under that lower standard, Wyndham was not entitled

[6] Like the Bureau in this action, the FTC had not requested deference to its interpretation of the law. *Wyndham*, 799 F.3d at 253. The "case involve[d] ordinary judicial interpretation of a civil statute," without reference to the agency's interpretation, adjudication, or regulation. *Id*. at 253–54.

to notice of the FTC's interpretation of what cybersecurity practices were required by § 45(a), but was "only entitled to notice of the meaning of the statute and not to the agency's interpretation of the statute." *Id.* at 255.

In *CFPB v. Navient*, the defendant student loan servicer moved to dismiss claims under the CFPA on the basis that the Bureau had not previously promulgated rules that it said would have provided fair notice of what acts or practices the Bureau considered unfair, deceptive, or abusive. No. 3:17-CV-101, 2017 WL 3380530, at *8 (M.D. Pa. Aug. 4, 2017). Relying on the fair-notice standards articulated in *Wyndham*, the court reasoned that the relevant legal question was whether the student loan servicer Navient had fair notice of what the CFPA requires, not notice of the Bureau's interpretation of the CFPA. *Id.* (quoting *Wyndham*, 799 F.3d at 256). Because Navient did not squarely explain why it was not reasonably foreseeable that a court could construe its alleged acts or practices as violations of the CFPA, the court deemed the argument waived. *Id.*[7]

[7] Navient also asserted that it lacked fair notice because it had complied with the Higher Education Act and its related regulations and its servicing contracts with the Department of Education. *Id.*, 2017 WL 3380530, at *8. But that argument was unavailing; the court pointed out that compliance with those obligations did not relieve Navient of "its obligation to refrain from committing acts that are unlawful under the CFP Act." *Id.*

Likewise, here, *Wyndham* instructs that PHEAA is not entitled to notice of the Bureau's interpretation of what policies or practices are required by the CFPA. Indeed, the Bureau does not administer the Bankruptcy Code and does not seek deference to its interpretation thereof. Therefore, PHEAA is entitled only to fair notice of what the CFPA *itself* requires. *Wyndham,* 799 F.3d at 254. PHEAA's claim that it "acted in reliance" on the Bureau's interpretation of the Bankruptcy Code (Def.'s Br. 34) (despite arguing vociferously and repeatedly that "the Bureau has no express authority over the Bankruptcy Code" (Def.'s Br. 17)) is also unavailing because the Bureau's previous statements concerning the Bankruptcy Code are simply irrelevant to whether PHEAA had notice of what the CFPA requires.

Moreover, PHEAA does not specify *which* of the unfair, abusive, or deceptive claims fail because it did not have fair notice of what the CFPA requires, let alone why the corresponding standard is vague. *See, e.g.*, *Wyndham*, 799 F.3d at 255–57. Thus, like the student loan servicer in *Navient*, PHEAA has "put forth no specific argument as to how or why the standards found in the CFP Act are so vague as to be no standards at all when applied to the facts of this case," and this Court "need not address this argument further." *Navient*, 2017 WL 3380530, at *8. Even if PHEAA had

mustered an argument, courts routinely reject arguments that defendants lack fair notice of what acts or practices the Bureau considers unfair, deceptive, or abusive under the CFPA. *See, e.g., CFPB v. Ocwen Fin. Corp.*, No. 17-80495-CIV, 2019 WL 13203853, at *18–19 (S.D. Fla. Sept. 5, 2019) (adopting the reasoning of *Wyndham* and *Navient* to reject fair-notice challenge to unfair and deceptive standards under CFPA and FDCPA); *CFPB v. ITT Educ. Servs., Inc.,* 219 F. Supp. 3d 878, 899–06 (S.D. Ind. 2015) (rejecting fair-notice challenges to the unfair and abusive standards in CFPA); *cf. Illinois v. Alta Colleges, Inc.*, No. 14 C 3786, 2014 WL 4377579, at *4 (Sept. 4, 2014) (same); *see also CFPB v. Manseth*, No. 22-CV-29-LJV, Slip Op., 2023 WL 5400235 at *22–23 (W.D.N.Y. Aug 22, 2023) (adopting *Wyndham* to reason that defendants could reasonably foresee that CFPA includes vicarious liability principles).

PHEAA's analogy to *PHH Corp. v. CFPB*, 839 F.3d 1, 44 (D.C. Cir. 2016) (subsequent history omitted) is misplaced because, unlike in *PHH*, the Bureau does not seek deference to its interpretation of the statute at issue. The Bureau relies on traditional methods of statutory construction of the Bankruptcy Code—including the plain meaning of the statute and judicial interpretation—to assert that, absent an exception to discharge under Section 523(a)(8) of the Bankruptcy Code, some private student loans are

dischargeable without a showing of undue hardship in an adversary proceeding. In addition, PHEAA's accusation that the Bureau adopted a "new interpretation" of Section 523(a)(8) of the Bankruptcy Code (Def.'s Br. 15) is incorrect. As PHEAA admits in its statement of facts, "for nearly a decade, the CFPB tells the public that private student loans are *generally* nondischargeable [sic] in bankruptcy without an adversary proceeding" (*id.* 10) (capitalization omitted; emphasis added). This action, however, is concerned with the small subset of loans that are *not* generally non-dischargeable—private, non-qualified educational loans. The Bureau never adopted any "new interpretation" of the Bankruptcy Code regarding these loans.

Even if the Bureau had altered its interpretation of which student loans are discharged in bankruptcy—which it did not—and even if this were relevant to PHEAA's fair notice under the CFPA—which it is not—this argument *still* would not be a basis for dismissal of the Bureau's claims. In *PHH*, the Court held that the Bureau's new interpretation of a section of the Real Estate Settlement Procedures Act could not be *retroactively* applied to conduct that occurred before that interpretation. 839 F.3d at 49. Here the Bureau has alleged PHEAA is engaged in *ongoing* illegal conduct in violation of the CFPA. (Compl. ¶¶ 3–8.)

## II. The Bankruptcy Code does not shield PHEAA from liability.

Nothing in the Bankruptcy Code (or any other law) protects PHEAA from liability here. While PHEAA argues that it cannot face liability here because the Bureau cannot enforce the Bankruptcy Code, (Def's Br. 17), that fundamentally misconstrues the claims in this case. The Bureau's action seeks to enforce the CFPA's prohibition on unfair, deceptive, and abusive acts and practices and the FCRA's implementing Regulation V, not the Bankruptcy Code. PHEAA's conduct as alleged here violated those laws even if that conduct also violated the Bankruptcy Code. And nothing limits the Bureau's straightforward statutory authority to enforce those laws.

### A. PHEAA's alleged conduct violates the CFPA and Regulation V even if it also violates the Bankruptcy Code.

For the reasons explained above, *see supra* Section I, PHEAA's conduct violated the CFPA's prohibitions on unfair, deceptive, and abusive acts and practices and Regulation V's requirement that companies maintain reasonable policies to help ensure that the information it furnishes to consumer reporting agencies is accurate. PHEAA nonetheless suggests that its conduct cannot violate the CFPA (or, presumably, FCRA and Regulation V) because that conduct would also amount to "violations of the corresponding discharge injunctions." (Def.'s Br. 27.)

That argument cannot be squared with Third Circuit precedent holding that where there is no "direct conflict" between the Bankruptcy Code and another federal statute, then "both can be enforced." *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 274 (3d Cir. 2013). Indeed, "'when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *Id.* (quoting *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143–44, (2001)). Where, as here, a party claims that the Bankruptcy Code "precludes" claims under another statute, "the right question is whether one [statute] implicitly repeals the other." *Simon,* 732 F.3d at 273–74 (describing Seventh Circuit's reasoning in *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) and "follow[ing] the Seventh Circuit's approach"). And repeal occurs only where there is "a clearly expressed legislative decision that one replace the other" or an "irreconcilable conflict between the statutes." *Id.*, at 273 (quoting *Randolph*, 368 F.3d at 730).

There is no such "clearly expressed legislative decision" or "irreconcilable conflict" between the Bankruptcy Code and the provisions of the CFPA and the Fair Credit Reporting Act's implementing regulation that the Bureau seeks to enforce. No provision in any of those statutes says that the Bankruptcy Code in any way supersedes the CFPA or the FCRA—and,

indeed, PHEAA points to no such "clear[] express[ion]" that Congress intended for the Bankruptcy Code to displace those laws' protections.

Nor is there any conflict—let alone an irreconcilable one—between the Bankruptcy Code and the provisions at issue here. The Bureau claims that PHEAA violated the CFPA by (among other things) collecting amounts that consumers did not actually owe because those amounts had been discharged in bankruptcy. That presents no conflict: the Bankruptcy Code prohibits the same thing, and PHEAA can easily comply with both. Indeed, multiple courts of appeals have held as much in analogous contexts. For instance, the Second Circuit allowed a consumer to pursue claims that a debt collector had violated the Fair Debt Collection Practices Act (FDCPA) by attempting to collect a debt that had been discharged in bankruptcy. *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 91 (2d Cir. 2016). The court explained that "there is no conflict"; the debt collector "can avoid violating both the [FDCPA] and the Bankruptcy Code simply by not attempting to collect the discharged debt," and if it tries to collect that debt, "it risks violation of both the [FDCPA] and the Bankruptcy Code." *Id.* at 92, 93. Likewise, the Seventh Circuit, in a decision the Third Circuit relied on heavily in *Simon*, rejected an argument that the Bankruptcy Code precluded similar FDCPA claims, reasoning that "it is easy to enforce both statutes, and any debt collector can

comply with both [the FDCPA and the Bankruptcy Code] simultaneously." *Randolph*, 368 F.3d at 730.

Here, too, PHEAA could easily comply with both the requirements underlying the Bureau's claims and the Bankruptcy Code. In fact, maintaining the policies and procedures required under those laws would have only helped PHEAA to avoid violating the Bankruptcy Code. There is no conflict.

Indeed, PHEAA points to no conflict that applying the CFPA and Regulation V would present here and instead urges this Court to follow a handful of cases that have held that the Bankruptcy Code precludes claims under other federal statutes that are "premised" on "violation of [the Code's discharge injunction]." (Def.'s Br. 31.) But in *Simon* the Third Circuit rejected the implied repeal approach in the cases cited by PHEAA. In particular, PHEAA cites the Ninth Circuit's decision *Walls v. Wells Fargo Bank, N.A.*, which held that attempting to collect a debt in violation of a bankruptcy discharge cannot be the basis for a claim under the FDCPA. (Def.'s Br. 31 (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, at 509–11 (9th Cir. 2002))). And the other cases that PHEAA cites all simply apply *Walls*.(*Id.*[8])

[8] Two of the other four cases PHEAA cites are from the same circuit as *Walls* and thus applied that case as binding precedent. *See Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1039 (9th Cir. 2023); *Davis v. KeyBank N.A.*, No.

But the Third Circuit in *Simon* explicitly considered and declined to adopt *Walls*'s "broad approach" to determining whether the Bankruptcy Code precluded other federal statutory claims, observing that *Walls* invoked "precedent involving federal statutory preemption of a state-law claim," and relying on that precedent "to decide whether a federal statute precludes a federal-law claim is misplaced." *Simon*, 732 F.3d at 275 (citing *Randolph*, 368 F.3d at 733).

### B. The Bureau has authority to address the CFPA and Regulation V violations alleged here.

The Bureau also clearly has authority to bring an enforcement action to address the violations of the CFPA and Regulation V alleged here. The Bureau is authorized to take enforcement action when "any person violates a Federal consumer financial law[.]" 12 U.S.C. § 5564(a). "Federal consumer financial law" encompasses the CFPA and its prohibitions on unfair, deceptive, and abusive acts or practices. *Id.* § 5481(14) ("Federal consumer

2:22-CV-01645, 2024 WL 3106830, at *1 (D. Nev. June 21, 2024). The other two cases, both from the Middle District of Pennsylvania, applied *Walls* before the Third Circuit issued its decision in *Simon* that rejected *Walls* court's approach and concluded instead that the Bankruptcy Code precludes claims under other federal statutes only if there is a clear statement of congressional intent or an irreconcilable conflict. *See Townsend v. M&T Mortg. Corp.*, No. 3:09cv1866, 2010 WL 2573825, at *5 (M.D. Pa. June 23, 2010) (noting at the time that "[t]he Third Circuit has not addressed the issue of whether claims under the FDCPA are precluded under the Bankruptcy Code"); *Zehnder v. FDS Bank*, No. 3:09-CV-1865, 2010 WL 11575034, at *4 (M.D. Pa. March 18, 2010) (observing same).

financial law means the provisions of this title," among other things). It also includes the "enumerated consumer laws," which covers the FCRA, *id.* § 5481(12)(F), and any rule the Bureau prescribes under an enumerated consumer law, which covers Regulation V, *id.* § 5481(14).

PHEAA principally objects that the Bureau can't enforce the Bankruptcy Code, but there is no dispute about that. The Bureau isn't trying to enforce the Bankruptcy Code here. It is enforcing the CFPA and Regulation V, and, as explained above, the conduct alleged here violates those statutes even if it also amounts to (or leads to) violations of the Bankruptcy Code.

To support its claim that the CFPA and Regulation V violations here somehow fall outside the scope of the Bureau's authority to enforce those laws, PHEAA relies on a proposed bill, the Consumer Bankruptcy Reform Act (CBRA), that would extend to the Bureau authority to enforce the Bankruptcy Code. In PHEAA's view, this shows that the Bureau does not have such authority already. This is beside the point, as the Bureau does not claim that it has authority to enforce the Bankruptcy Code. And nothing in the CBRA suggests that the Bureau currently lacks authority to enforce the

CFPA and Regulation V when violations of those statutes could also involve violation of the Bankruptcy Code.[9]

Nor is there any basis to conclude that the Bureau's straightforward authority to enforce the CFPA and Regulation V is limited when the conduct would also violate the Bankruptcy Code. Again, *Simon* makes clear that the Bankruptcy Code doesn't preclude enforcement of other overlapping

[9] PHEAA also suggests, in passing, that Congress could not have intended to give the Bureau authority to "police the Bankruptcy Code" because that would "hide [an] elephant[] in [a] mousehole." (Def.'s Br. 21.) But, again, the Bureau isn't seeking to enforce the Bankruptcy Code here. It seeks to enforce the CFPA's prohibitions on unfair, deceptive, and abusive practices, and it is well accepted that collecting debts that consumers do not actually owe violates that prohibition—even if (as is usually the case) some other law is the reason consumers do not owe the debt. *See CFPB v. CashCall, Inc.*, 35 F.4th 734, 746–47 (9th Cir. 2022) (holding that the CFPA made it unlawful to falsely "le[a]d borrowers to believe that they had an obligation to pay" loans that were in fact void, even though "the reason that the debts were invalid happens to involve state law"); *CFPB v. Think Fin., LLC*, No. CV-17-127-GF-BMM, 2018 WL 3707911, at *3 (D. Mont. Aug. 3, 2018) (recognizing claim that defendant had violated CFPA by collecting on loans that state law rendered void and explaining that "[t]he fact that state law may underlie the violation . . . does not relieve Defendants, or any other covered person or service provider, of their obligation to comply with the CFPA"); *Pennsylvania v. Think Fin., Inc.*, No. 14-CV-7139, 2016 WL 183289, at *26 (E.D. Pa. Jan. 14, 2016) (denying motion to dismiss CFPA abusiveness claim based on allegation that lender collected loans that were void under state law); *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 777 (S.D.N.Y. 2018) (holding Bureau had stated claim that defendant had violated CFPA's prohibition on deception by "collecting on contracts that are void under state laws"), *rev'd on other grounds,* 828 F. App'x 68 (2d Cir. 2020). It is no different when a consumer does not owe a debt because of a bankruptcy discharge.

statutory commands where there is no conflict between the statutes. *See* 732 F.3d at 274; *accord Randolph*, 368 F.3d at 730; *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 91 (2d Cir. 2016).

There is no conflict here, much less the "irreconcilable conflict" needed for the Bureau's CFPA claims to be precluded. *Simon*, 732 F.3d at 274. Nothing prevents PHEAA from complying with both bankruptcy discharge injunctions and the Federal consumer financial laws at issue here. It can comply with both by not seeking to collect debts that have been discharged and by maintaining policies to assess for whether debts have been discharged.

And there is no conflict between the remedies the Bureau seeks and the remedies available under the Bankruptcy Code. PHEAA details at length the mechanisms debtors, bankruptcy courts, and the United States Trustee Program have to address violations of a bankruptcy discharge. That, too, is a red herring. As *Simon* makes clear, "[t]he fact that the bankruptcy court has other means to enforce compliance with" bankruptcy rules "does not conflict with finding liability or awarding damages under [another statute] for violations based on [the defendant's] failure to comply with" those

bankruptcy rules. 732 F.3d at 279.[10] The conduct that the Bureau alleges here violates the CFPA and Regulation V, and the Bureau has authority to address those violations, just as it can address other violations of those laws.

### III. The Bureau is not required to join lenders in this enforcement action.

Under Rule 19(a), an absent person must be joined to the action if "the court cannot accord complete relief" in the person's absence, Fed. R. Civ. P. 19(a)(1), or if the absent person "claims an interest relating to the subject of the action" and disposal of the action may impair the person's ability to protect that interest or leave the defendant subject to inconsistent obligations by reason of the claimed interest, *id.* 19(a)(1)(B). Rule 19(c) provides that a party "asserting a claim for relief" must identify a person who is required to be joined, so as to ensure necessary parties be informed of the pending action. Adv. Comm. Notes. to Rule 19(c). If the court holds that joinder is necessary under Rule 19(a)(1)(A) or (B), but joinder would deprive the court of subject-matter jurisdiction, the court may exercise its discretion under Rule 19(b) to "consider modification of a judgment" or dismiss the case because joinder is not feasible and the absent party is indispensable.

[10] Likewise, the Bureau is not arrogating to itself the power to "unilaterally decide" (Def.'s Br. 31) whether PHEAA has attempted to collect debts that were in fact discharged. This Court will decide whether PHEAA engaged in that conduct, and whether the debts at issue had been discharged.

*Provident Tradesmens Bank & Tr. Co. v. Patterson,* 390 U.S. 102, 112, 116 fn. 12 (1968); *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312–13 (3d Cir. 2007) (internal citations omitted).

Under Rule 12(b)(7), the burden is on the moving party to show the absent person's "interest relating to the subject of the action," as well as possibility of injury to the absent person. *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011); *see also Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir.2005); *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994). The court accepts the factual allegations in the complaint as true and draws inferences in favor of the non-moving party, *Pittsburgh Logistics Sys., In. v. C.R. England, Inc.,* 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009), although the moving party may present extra-pleading evidence to satisfy its burden to show the interests of the absent party. *Linskey v. Guariglia,* No. 3:11–2059, 2012 WL 1268913, at *11 (M.D. Pa. April 16, 2012); 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1359 Motions to Dismiss—Failure to Join a Party Under Rule 19, (3d ed. 2004; June 2024 update).

### A. The Bureau properly exercised its discretion in suing PHEAA for its unlawful conduct.

As an initial matter, PHEAA ignores that law enforcement agencies have discretion when deciding whom to sue in enforcement actions. *See Heckler v. Chaney*, 470 821, 831 (1985). The Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Id.; see CFPB v. Chou Team Realty LLC*, No. SACV 20-43 JVS, 2020 WL 4873529, at *3 (C.D. Cal. June 3, 2020) ("Rule 19 is not the appropriate vehicle to force the Bureau to name parties it declined to include in its Complaint."); *SEC v. Laura*, No. 18-CV-5075, 2020 WL 1434114, *4 (E.D.N.Y. March 24, 2020); *FTC v. Com. Planet, Inc.*, No. 09-01324-CJC, 2010 WL 11673795, *3 (C.D. Cal. July 6, 2010). The CFPA vests discretion with the Bureau to decide whether to commence an action. 12 U.S.C. § 5564 (providing the Bureau "may" commence a civil action); *see Kingdomware Techs., Inc. v. U.S.*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.") Thus, parties to an enforcement action cannot compel the Bureau to join other persons as defendants in the enforcement action.

### B. PHEAA fails to identify any lenders that it contends would be necessary parties.

Even if Rule 19 permitted PHEAA to move for compulsory joinder or dismissal, PHEAA fails to name which lenders are necessary parties (Def.'s Br. 44) while asserting that the unknown parties have interests "at the very core of this action." (*Id.* 42.) In doing so, PHEAA attempts to impermissibly shift its burden under Rule 12(b)(7) to the Bureau to prove the lenders are absent persons required to be joined. PHEAA fails to discharge its burden to demonstrate which lenders are absent, what contracts confer an interest "relating to the subject matter of the action," or why disposition of this case "impairs or impedes" those interests. *See* Rule 19(a)(1)(B); *Disabled in Action of Pa.,* 635 F.3d at 97. No joinder is required here, and PHEAA's motion to dismiss under Rule 12(b)(7) should be denied.[11]

First, PHEAA ignores its responsibility to identify the specific lenders with whom it has contracts related to servicing private student loans, suggesting that the Bureau has knowledge. But the Bureau does not assert claims for relief against the lenders. *See Greenwich Life Settlements, Inc. v. ViaSource Funding Gr., LLC*, 742 F. Supp. 2d 446, 457 (S.D.N.Y. 2010)

---

[11] PHEAA has also not shown that these unknown parties "cannot be joined", which is required to obtain dismissal under Rule 19(b). *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 (3d. Cir. 1988).

(internal quotation marks and citations omitted) (ruling that dismissal under 19(c) would be warranted only where a required party was hidden from a defendant). PHEAA's reliance on *Engel v. R.J. Reynolds Tobacco Co.*, No. 2:17-CV-618, 2017 WL 2119805 (E.D. Cal. May 16, 2017) does not justify dismissal because, in that case, plaintiff ignored the state statute explicitly requiring joinder of heirs in a wrongful death action. No similar failure is present here.

Moreover, discovery has not commenced; the Bureau does not have evidence identifying specific lenders that have a contract that may confer the lender interest "relating to the subject of this action." *See, e.g., Pa. Game Comm. v. Thomas E. Proctor Heirs Tr.,* No. 1:12-cv-1567, 2017 WL 4275427, at *15 (M.D. Pa. Aug. 11, 2017) (recommending denying motion to dismiss where party sought to join "unnamed" persons), *report adopted*, 2017 WL 4269114 (M.D. Pa. Sept. 26, 2017); *Wallace v. Mathias,* No. 4:12-cv-3011, 2012 WL 2870708, at *2 (D. Neb. July 10, 2012) (denying motion to dismiss under Rule 12(b)(7) because defendant did not name absent parties). Further, PHEAA's reliance on *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502 (D.N.J. 2000) is misplaced because the Court's jurisdiction in this matter is based on federal-question jurisdiction, not diversity, and therefore

joinder of absent parties would not deprive the Court of its subject-matter jurisdiction. *See* Rule 19(a)(1).

PHEAA likewise fails to identify the specific contracts that create an "interest relating to the subject matter of the action." *See* Rule 19(a)(1)(B). Despite having an opportunity to provide extra-pleading evidence, *see Dec on behalf of Appolyon, Inc. v. McLean*, No. 1:24-CV-83, 2024 WL 3597113, at *3 (M.D. Pa. July 30, 2024) (citing *Polygon U.S. Corp. v. Diversified Info. Techs.,* No. 3:CV-12-0923, 2012 WL 5379168, at *4 (M.D. Pa. Oct. 31, 2012), PHEAA's oblique references to "lender's rights" (Def.'s Br. 42) and "contractual obligations under its servicing agreements with the lenders" (*id.* 42) do not identify specific servicing agreements, the parties to the servicing agreements, or the contractual obligations that represent a legally protected interest. The Court cannot analyze the interests of absent persons without knowing either the person or the basis of its interest, let alone whether disposition of the action would impair those interests or leave PHEAA at risk of inconsistent obligations. *See* Rule 19(a)(1)(B)(i)–(ii); *see also, e.g., Sugar Bowl Ranch, LLC v. SWN Prod. Co., LLC,* No. 4:22-cv-00287, 2022 WL 4472452, at *3 (M.D. Pa. Sept. 26, 2022) (citing *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1040 (11th Cir. 2014) (interpreting "inconsistent obligations" to refer to conflicting court orders)).

Moreover, PHEAA is incorrect generally that any lender is the "real party in interest" or has a "direct financial interest" in the subject matter of this action. (Def.'s Br. 43). Accepting as true the Bureau's allegation that the private student loans at issue were already discharged in bankruptcy and consumers were no longer obligated to pay them (Compl. ¶ 22), then the lenders' legal interests in the debts were extinguished when the debts were discharged in bankruptcy. 11 U.S.C. § 524(a)(1); *see Johnson v. Home State Bank*, 501 U.S. 78 fn. 5 (1991) (bankruptcy discharge extinguishes creditor's *in personam* claim against debtor).

At any rate, PHEAA's argument misconstrues the nature of the Bureau's suit because its contracts are not the "subject of the action." Although parties owning rights under disputed contracts generally have a legally protected interest under Rule 19(a)(1)(B)(i), *see Epsilon Energy USA, Inc. v. Chesapeake Appalachia*, LLC, 80 F.4th 223, 233 (3d Cir. 2023), PHEAA's contracts with lenders are not in dispute. The "subject of the action" is PHEAA's lack of policies and procedures, which result in its demand for payments that consumers do not owe.

Finally, the Court should decline PHEAA's invitation to prematurely speculate that the Court cannot accord complete relief among the existing parties. *See* Rule 19(a)(1)(A). PHEAA has not demonstrated that absence of

the lenders affects the Court's ability to accord compete relief in this action—which is based on PHEAA's lack of policies and procedures to assess whether the loans it services have been discharged, its practices collecting on discharged debt, and its lack of policies and procedures regarding the accuracy of information furnished to credit reporting agencies about consumers whose debts were discharged. PHEAA does not explain how the lenders' legally cognizable interests would be harmed by relief correcting PHEAA's servicing practices. *See, e.g., Nigro v. PHEAA*, No. 1:19-cv-02000, 2020 WL 5369980, at *13 (M.D. Pa. Sept. 8, 2020) (ruling the Department of Education not a necessary party under Rule 19(a)(1)(B)(i) in suit charging PHEAA with improperly servicing loans because Department's interest was in correct service, and "[t]o hold otherwise would imply that the Department has an interest in its contractors committing malfeasance while servicing loans on its behalf, which is nonsensical.").

Instead, PHEAA posits that—on the basis of contracts that it has not identified or produced—"complete" relief would require recission or reformation of those contracts which it has not identified or produced, and thus the action must be dismissed. PHEAA ignores the analysis required under Rule 19(b). For example, the Court can "shap[e] the relief" to avoid prejudice to an absent party. *Cf. Commonwealth v. PHEAA*, No.

1784CV02682, 2018 WL 1137520, at *10 (Mass. Super. Ct. Mar. 1, 2018) (ruling that U.S. Department of Education was not indispensable party in state's CFPA claim against PHEAA based on "mere fact that some but not all of the relief sought by the Commonwealth in this case is allegedly inconsistent with the Department's rights under its contract with PHEAA"). PHEAA has not provided the Court a basis to determine that the parties should be joined, cannot be joined and, in equity and good conscience, the action should be dismissed.

## **CONCLUSION**

For these reasons, the Court should deny PHEAA's motion to dismiss. If any part of PHEAA's motion is granted, the Bureau should be granted leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

Dated: September 17, 2024

Respectfully submitted,

Eric Halperin
*Enforcement Director*

Deborah Morris
*Deputy Enforcement Director*

Rebeccah Bower
*Assistant Deputy Enforcement Director*

Emily R. Holness

Emily R. Holness
New York Bar No. 4947941

Elizabeth A. Homan
Virginia Bar No. 87637

Adrienne Warrell
New York Bar No. 5361092

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Email: Emily.Holness@cfpb.gov
Email: Elizabeth.Homan@cfpb.gov
Email: Adrienne.Warrell@cfpb.gov

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on September 17, 2024, I electronically filed the foregoing using the Court's ECF system.

Emily R. Holness

Emily R. Holness
New York Bar No. 4947941

*Enforcement Attorney*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Email: Emily.Holness@cfpb.gov

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I certify that, in accordance with Local Rule 7.8(b)(2) and the Court's Verbal Order entered on September 12, 2024 (ECF No. 35), the foregoing brief does not exceed 45 pages in length. The brief contains 9,981 words.

*Emily R. Holness*

Emily R. Holness
New York Bar No. 4947941

*Enforcement Attorney*

Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Email: Emily.Holness@cfpb.gov