**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:24-CV-896 |
| | § | |
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, | § | |
| | § | |
| Defendant. | § | |

**REPLY IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

STEVE M. DOLLAR
ALLISON L. SILVERMAN
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019

THOMAS A. COULTER
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001

RYAN E. MELTZER
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701

JAMES J. JARECKI
PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY
1200 N. 7th Street
Harrisburg, PA 17102

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................1

ARGUMENT..............................................................................................2

I. The Bureau's Concessions and Omissions Confirm That This Action Exceeds Its Statutory Authority ..........................................2

A. The Bureau's UDAAP Authority Is Not a License to Rewrite the CFPA and Reorder the Federal Bankruptcy System......................3

II. The CFPB Has Failed to State a Claim Under the CFPA.......................10

A. This Action Offends Due Process ...................................................10

B. The Bureau's CFPA Claims Fail as a Matter of Law ........................14

III. The Bureau's Failure to Join the Lenders as Necessary Parties Compels Dismissal ...........................................................18

A. The Bureau's Enforcement Discretion Is Irrelevant ..........................18

B. The Bureau's Focus on PHEAA's Burden Under Rule 12(b)(7) Ignores the Bureau's Initial Burden Under Rule 19 ..........................20

CONCLUSION.........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021)....6

*In re Amazon Serv. Fee Litig.*,
2024 WL 3460939 (W.D. Wash. July 18, 2024),
*appeal docketed*, No. 24-5176 (9th Cir. 2024) ....14

*In re Anderson*,
884 F.3d 382 (2d Cir. 2018) ....6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....16

*Brown v. Transworld Sys., Inc.*,
73 F.4th 1030 (9th Cir. 2023) ....10

*Bruce v. Citigroup Inc.*,
75 F.4th 297 (2d Cir. 2023) ....10

*CFPB v. Consumer First Legal Grp., LLC*,
6 F.4th 694 (7th Cir. 2021) ....3

*CFPB v. Intercept Corp.*,
2017 WL 3774379 (D.N.D. Mar. 17, 2017) ....16

*CFPB v. Navient Corp.*,
2017 WL 3380530 (M.D. Pa. Aug. 4, 2017) ....12, 13

*Chamber of Com. v. CFPB*,
691 F. Supp. 3d 730 (E.D. Tex. 2023),
*appeal docketed*, No. 23-40650 (5th Cir. 2023) ....3

*In re Crocker*,
941 F.3d 206 (5th Cir. 2019) ....10

*D'Angio v. Borough of Nescopeck*,
34 F. Supp. 2d 256 (M.D. Pa. 1999)....3

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....14, 15

*Dreibelbis v. Scholton*,
274 F. App'x 183 (3d Cir. 2008) ....3, 4, 9

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012)....12

*Freedom Mortg. Corp. v. Dean*,
647 B.R. 780 (Bankr. M.D. Fla. 2023) ....2

*FTC v. Neovi, Inc.*,
604 F.3d 1150 (9th Cir. 2010) ....15

*FTC v. Wyndham Worldwide Corp.*,
799 F.3d 236 (3d Cir. 2015) ....11, 12, 13

*Garfield v. Ocwen Loan Serv.*,
811 F.3d 86 (2d Cir. 2016) ....................7
*Garland v. Children's Place, Inc.*,
2024 WL 1376353 (N.D. Ill. Apr. 1, 2024) ....................14
*Gurdine v. Mason*,
2024 WL 2054996 (M.D. Pa. May 8, 2024) ....................9
*Holden v. Holiday Inn Club Vacations Inc.*,
98 F.4th 1359 (11th Cir. 2024) ....................15, 18
*Horsch v. Wells Fargo Home Mortg.*,
94 F. Supp. 3d 665 (E.D. Pa. 2015) ....................17
*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) ....................16
*Johnson v. TransUnion*,
2023 WL 6035573 (N.D. Ga. Aug. 11, 2023) ....................18
*Losch v. Nationstar Mortg. LLC*,
995 F.3d 937 (11th Cir. 2021) ....................17
*Mader v. Experian Info. Sols. Inc.*,
56 F.4th 264 (2d Cir. 2023) ....................18
*Markert v. PNC Fin. Servs. Grp.*,
828 F. Supp. 2d 765 (E.D. Pa. 2011) ....................3
*Middlesex Water Co. v. Pa. Pub. Util. Comm'n*,
2024 WL 199558 (M.D. Pa. Jan. 18, 2024) ....................20
*Midland Funding v. Johnson*,
581 U.S. 224 (2017) ....................7, 8, 17
*Orkin Exterminating Co. v. FTC*,
849 F.2d 1354 (11th Cir. 1988) ....................15
*PHH Corp. v. CFPB*,
839 F.3d 1 (D.C. Cir. 2016) ....................12, 13, 14
*In re Piazza*,
605 B.R. 332 (Bankr. M.D. Pa. 2019) ....................19
*Poling v. K. Hovnanian Enters.*,
99 F. Supp. 2d 502 (D.N.J. 2000) ....................20
*Randolph v. IMBS, Inc.*,
368 F.3d 726 (7th Cir. 2004) ....................7
*Simon v. FIA Card Servs.*,
732 F.3d 259 (3d Cir. 2013) ....................7
*Stillwagon v. Innsbrook Golf & Marina, LLC*,
2013 WL 1180312 (W.D. Pa. Mar. 20, 2013) ....................19
*W. Virginia v. EPA*,
597 U.S. 697 (2022) ....................6

**Rules and Statutes**

Fed. R. Civ. P. 11 ....................20

Fed. R. Civ. P. 12(b)(6) ....................1, 9, 14, 17
Fed. R. Civ. P. 12(b)(7) ....................20
Fed. R. Civ. P. 19....................2, 19, 20
11 U.S.C. § 523....................9, 14
12 U.S.C. § 5481....................5
12 U.S.C. § 5531....................14
12 U.S.C. § 5536....................5, 7, 17

**Legislative and Administrative Materials**

Bulletin 2023–01: Unfair Billing and Collection Practices After Bankruptcy Discharges of Certain Student Loan Debts, 88 Fed. Reg. 17,366 (Mar. 23, 2023)....................1, 4, 11, 12, 14
Consumer Bankruptcy Reform Act of 2022, S. 4980, 117th Cong. (2022) ....................4, 5, 6, 8
Consumer Bankruptcy Reform Act of 2020, S. 4991, 116th Cong. (2020) ....................5

**Secondary Authorities**

*Kara Bruce & Alexandra Sickler,* The CFPB Enters Consumer Bankruptcy, 41 Bankr. L. Letter, no. 10, Oct. 2021. ....................5

## INTRODUCTION

PHEAA's Motion to Dismiss presents a straightforward issue: Whether the Bureau has exceeded its authority by attempting to recast alleged Discharge Order violations as UDAAPs and effectively rewriting its enabling legislation to grant itself regulatory authority over the Bankruptcy Code. The Bureau offers no answer to that question. It does not even acknowledge it until page 28 of its Opposition. And when it finally does, the Bureau musters no meaningful opposition. It admits that it has no express authority over the Bankruptcy Code, it distances itself from the 2023 Bulletin that it knows presents constitutional and statutory problems, and it either waives any response to PHEAA's dispositive arguments through silence or relies on case law that ultimately lends it no support. The briefing leaves no doubt that the Bureau has overstepped, and the only proper recourse is dismissal. After all, agencies are creatures of statute, and when they stray beyond the bounds set by the people's elected representatives, courts serve as an essential check.

Even if the Bureau had authority to bring this action, dismissal with prejudice still would be warranted. The Bureau's case rests on a misreading of the Bankruptcy Code, and its central premise—that PHEAA allegedly violated "at least 177" Discharge Orders without a word from the corresponding debtor or bankruptcy court—constitutes an unadorned legal conclusion that is not presumed true under Rule 12(b)(6). Without the predicate of an actual violation of bankruptcy law, the Bureau's case collapses. In addition, the Bureau's pleadings refute the elements of its

claims under the CFPA and the FCRA as construed by federal courts. And, on top of it all, the Bureau offers an implausible excuse for its noncompliance with Rule 19.

## ARGUMENT

### I. THE BUREAU'S CONCESSIONS AND OMISSIONS CONFIRM THAT THIS ACTION EXCEEDS ITS STATUTORY AUTHORITY

At the outset, the Bureau concedes that it ***does not*** (i) have regulatory authority over the Bankruptcy Code, (ii) administer the Bankruptcy Code, or (iii) seek deference to its new interpretation of the Bankruptcy Code. Opp. at 25, 26, 28, 33, 34 n.9; *cf. Freedom Mortg. Corp. v. Dean*, 647 B.R. 780, 783 (Bankr. M.D. Fla. 2023) ("Congress never charged the CFPB with administering the bankruptcy code.").

The Bureau disingenuously portrays the threshold statutory and constitutional questions posed in this case as "red herrings." Opp. at 3, 35. A plain reading of the complaint proves otherwise. The Bureau's claims all hinge on the interpretation and enforcement of the Bankruptcy Code and the Discharge Orders issued by bankruptcy courts, and the conduct that allegedly violates "federal consumer financial law" is all inextricably tied to bankruptcy law. Indeed, even as it maintains that it merely "seeks to enforce the CFPA's prohibitions on [UDAAPs]," and "collecting debts that consumers do not actually owe violates that prohibition," the Bureau acknowledges that "***some other law is the reason*** consumers do not owe the debt." *Id.* at 34 n.9. Because "the reason" for the Bureau's UDAAP claims is the alleged violation of bankruptcy law that the Bureau admits it cannot enforce, this action clearly exceeds

the Bureau's statutory authority. *See Chamber of Com. v. CFPB*, 691 F. Supp. 3d 730, 739–43 (E.D. Tex. 2023), *appeal docketed*, No. 23-40650 (5th Cir. 2023); *see also CFPB v. Consumer First Legal Grp., LLC*, 6 F.4th 694, 705–06 (7th Cir. 2021) (CFPB regulation that "exceed[ed] [the CFPA's] grant of authority to the Bureau," and "direct[ly] conflict[ed]" with the unambiguous statutory text "cannot stand").

### A. The Bureau's UDAAP Authority Is Not a License to Rewrite the CFPA and Reorder the Federal Bankruptcy System

As PHEAA pointed out in its opening brief, it was just last year that another federal court enjoined a different effort by the Bureau to expand its authority under the guise of enforcing UDAAPs. Br. at 22–24 (discussing *Chamber of Com.*, 691 F. Supp. 3d 730). Incredibly, the Bureau does not even mention the *Chamber of Commerce* decision, and it certainly never attempts to distinguish it or explain why it does not compel the same result here. *Cf.* Opp. at 28–36. Any counterargument is therefore waived. *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to argument plaintiff failed to address in opposition); *Markert v. PNC Fin. Servs. Grp.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant."); *D'Angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (finding waiver of claims not argued in opposition to dismissal).

In like manner, the Bureau also ignores PHEAA's authorities on the interpretive rules governing judicial review of agency authority and the construction of statutes delineating the power of regulatory bodies. *Compare* Br. at 20–21, 25–27, *with* Opp. at 28–36. While the Bureau may hope this Court accepts its attempt at deflection and its tacit disavowal of the Bulletin, that is its risk to bear; it has forfeited any counterarguments on those threshold issues. *Dreibelbis*, 274 F. App'x at 185.

*1. The CBRA Is Direct and Decisive Evidence That the Bureau Currently Lacks the Authority It Asserts in This Action*

Similarly, PHEAA detailed exactly how the legislative history of the CBRA—its drafting and its failure to advance—proves that the Bureau is attempting to short-circuit the legislative process and expand its powers without Congressional action. Br. at 14–15, 24–25, 30 n.21. The Bureau's only response is to construct a false premise: PHEAA's alleged conduct ***independently*** violates the CFPA and FCRA, regardless of whether it ***also*** violates bankruptcy law. *See* Opp. at 28. But again, the only "reason" the Bureau claims the CFPA and FCRA were violated—PHEAA's conduct as to "discharged debt" or "debts not owed"—is inherently a matter of bankruptcy law. *Supra* at 2–3. The Bureau fails to recognize that the feature of the private student loans that it claims gives rise to liability (their discharge status) is dictated by the Bankruptcy Code and determined by the presiding bankruptcy court, and if those loans in fact were discharged, any collection attempts violate that court's Discharge Order. Br. at 27–32. That is what makes the Bureau's concessions fatal:

it can only enforce the CFPA and FCRA by enforcing the Bankruptcy Code, yet it repeatedly admits that it "can't enforce the Bankruptcy Code." *E.g.*, Opp. at 33.

The Bureau's effort to downplay the CBRA flouts the text of the legislation. While the Bureau protests that "nothing in the CBRA suggests that the Bureau currently lacks authority to enforce the CFPA and Regulation V when violations of those statutes could also involve violation of the Bankruptcy Code," *id*. at 34, two provisions of the bill do just that: (1) Section 201(c), which would add the Bankruptcy Code to the list of enumerated consumer laws in Section 5481(12) of the CFPA; and (2) Section 201(d), which would designate the violation of a Discharge Order a "prohibited act" subject to CFPB enforcement under Section 5536(a) of the CFPA. *See* CBRA 2022 § 201(c), (d); CBRA 2020 § 201(c), (d). Those amendments are why commentators have described the CBRA as proposing a "significant change to the regulatory landscape" by placing the Bankruptcy Code "under the CFPB's regulatory purview" and "creat[ing] a regulatory role for the CFPB in bankruptcy."[1]

2. *This Action Necessarily Will Intrude on Bankruptcy Jurisdiction and Create Conflicts with Bankruptcy Law*

The Bureau does not dispute that the bankruptcy system is subject to comprehensive oversight, nor that its UDAAP theory would (at a minimum) overlap with bankruptcy remedies. Instead, it reframes the issue as one of preclusion or

[1] Kara Bruce & Alexandra Sickler, *The CFPB Enters Consumer Bankruptcy*, 41 Bankr. L. Letter, no. 10, 2-4 Oct. 2021.

implied repeal and argues there is no "direct conflict" between the Bankruptcy Code and the CFPA and FCRA. Opp. at 28–35. The Bureau is misguided. Bankruptcy law is clear that violations of discharge injunctions—the conduct underlying the Bureau's claims—are enforceable only by contempt and only in the issuing bankruptcy court. *See* Br. 27–32. That is because, as the Bureau acknowledges, Discharge Orders are ***not*** specific to the debtor, Compl. ¶ 17, and the bankruptcy court has "unique expertise in interpreting its injunctions and determining when they have been violated," *In re Anderson*, 884 F.3d 382, 390–91 (2d Cir. 2018). In contrast, the Bureau proposes to step into the shoes of every debtor, every bankruptcy court, and even the USTP, and interpret and enforce Discharge Orders nationwide, yet it points to nothing in the CFPA that would grant it such vast authority. *See W. Virginia v. EPA*, 597 U.S. 697, 723 (2022) ("Extraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle device[s].'"); *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764 (2021) ("We expect Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance.").

The Bureau also misses the mark on preclusion. There is an obvious "direct conflict" between the Bankruptcy Code and the CFPA: The former creates the remedy for a discharge violation, and the latter gives the Bureau no role in bankruptcy. The CBRA (if enacted) would eliminate that conflict by empowering the Bureau to take enforcement action for discharge violations as "prohibited acts" under

Section 5536(a). The Bureau's authorities are not to the contrary. *See* Opp. at 29–31 (citing *Garfield v. Ocwen Loan Serv.*, 811 F.3d 86 (2d Cir. 2016); *Simon v. FIA Card Servs.*, 732 F.3d 259 (3d Cir. 2013); *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004)). Those cases involved a different statute (the FDCPA) and individual debtors asserting claims against individual debt collectors based on acts taken while the debtor was protected by an automatic stay or based on debts whose discharge status was fixed by individual Discharge Orders and was undisputed. *See Garfield*, 811 F.3d at 92–93; *Simon*, 732 F.3d at 274; *Randolph*, 368 F.3d at 728–29.

More importantly, the Bureau overlooks subsequent Supreme Court authority that casts serious doubt on its preclusion cases. In *Midland Funding v. Johnson*, 581 U.S. 224 (2017), the Court analyzed the application of the FDCPA to conduct in bankruptcy—an issue bearing on the holdings in *Randolph* and its progeny—and held that a debt collector's proof-of-claim filing on a clearly time-barred debt does not violate the FDCPA's ban on deceptive, misleading, or unfair practices. *Id.* at 235. The Court explained that civil suits "differ[] significantly" from bankruptcy proceedings, and concerns that "a consumer might unwittingly repay a time-barred debt" have "significantly diminished force" in the bankruptcy context. *Id.* at 231. Among other things, the consumer initiates the proceeding, "[a] knowledgeable trustee is available," and "[p]rocedural bankruptcy rules more directly guide the evaluation of claims," making it "considerably more likely" that an effort to collect a stale claim "will be met with resistance, objection, and disallowance." *Id.* at 231–

32. The Court also rejected calls to change the treatment of untimeliness as an affirmative defense to a claim in bankruptcy, observing that it did not find in either the FDCPA or the Bankruptcy Code "good reason to believe that Congress intended an ordinary civil court applying the [FDCPA] to determine answers to these bankruptcy-related questions." *Id.* at 233. Given the statutes' "different purposes and structural features," to find the FDCPA applicable here would "upset" the "delicate balance of a debtor's protections and obligations" struck by the Bankruptcy Code and, further, "would authorize a new significant bankruptcy-related remedy in the absence of language in the Code providing for it." *Id.* at 233–34.

The Court's reluctance to disrupt the Bankruptcy Code's "delicate balance" is at odds with *Randolph*, and its refusal to bless a "new bankruptcy-related remedy" in district court without a textual basis in the Bankruptcy Code extends equally to the Bureau's CFPA claims. *Id.* Nothing in the CFPA or the Bankruptcy Code indicates that "Congress intended an ordinary civil court applying the [CFPA] to determine answers to the[] bankruptcy-related questions" raised here (*i.e.*, whether any of the "at least 177" loans were discharged). In fact, the CBRA suggests the opposite, as it ***would*** call for that finding. But the CBRA is not law, and so the conflict persists.

*3. The Bureau Erroneously Assumes the Legal Conclusion Underlying All of Its Claims*

Beyond the above flaws, the Bureau's core premise that certain types of private student loans with common features are automatically discharged by a

standard Discharge Order is a legal conclusion that, for Rule 12 purposes, this Court need not accept as true. Yet the Bureau repeatedly invokes the standard of review to imply that its complaint must survive because it has "plausibly alleged" that "non-qualified" private student loans are discharged by a Discharge Order and that, in turn, PHEAA has committed UDAAPs with respect to debts that are "not owed." *See, e.g.*, Opp. at 17, 30. Section 523(a)(8) and Rule 12(b)(6) dictate otherwise.

PHEAA identified current decisions from an array of bankruptcy courts concluding that virtually every category of private student loan cited by the Bureau was ***not*** discharged absent undue hardship, whether because those loans qualified as "educational benefits" (Subsection (A)(i)) or because they were "made under any program funded in whole or in part by a governmental unit or nonprofit institution," including any program to which a nonprofit entity "devote[d] its financial resources" (Subsection (A)(ii)). *See* Br. at 9–10 (collecting cases). The Bureau again refuses to engage, forfeiting any opportunity to counter. *See Dreibelbis*, 274 F. App'x at 185. The most the Bureau does is repeat its unadorned allegation that PHEAA violated "at least 177" Discharge Orders. Opp. at 6. But without legal or factual support—not even a single contempt motion or finding by any bankruptcy court—that allegation is not entitled to a presumption of truth. *See Gurdine v. Mason*, 2024 WL 2054996, at *2 (M.D. Pa. May 8, 2024) (Conner, J.) ("mere legal conclusions may be disregarded" in Rule 12(b)(6) context).

The Bureau also makes a halfhearted effort to minimize its usurpation of authority from the bankruptcy courts and the USTP. While the Bureau buries in a footnote that it "is not arrogating to itself the power to 'unilaterally decide' whether PHEAA has attempted to collect debts that were in fact discharged," Opp. at 36 n.10, its complaint cannot be read any other way. It alleges PHEAA "attempted to collect on approximately 7,934 private student loans after a bankruptcy proceeding, at least 177 of which were non-qualified education loans," and because PHEAA "resumed collecting on at least some private, non-qualified education loans discharged by an Order of Discharge[,] . . . consumers who obtained a discharge paid thousands or tens of thousands of dollars they did not owe." Compl. ¶¶ 36–37. Worse, the Bureau concludes its footnote by suggesting that this Court review and adjudicate the Discharge Orders issued by bankruptcy courts across the country, Opp. at 36 n.10, contrary to the uniform view of federal appellate courts. *See Bruce v. Citigroup Inc.*, 75 F.4th 297, 303–04 (2d Cir. 2023); *Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1039 (9th Cir. 2023); *In re Crocker*, 941 F.3d 206, 216–17 (5th Cir. 2019).

## II. THE CFPB HAS FAILED TO STATE A CLAIM UNDER THE CFPA

### A. This Action Offends Due Process

At root, the Bureau attempts to penalize student loan servicers for adhering to the Bureau's own years of public guidance regarding the treatment of private student loans following bankruptcy. This violates all traditional notions of due process.

As an initial matter, the Bureau misrepresents its leading authority, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015). After accusing PHEAA of misstating the level of notice required, Opp. at 22, the Bureau omits the Third Circuit's ensuing admonition in *Wyndham* that "[a] different set of considerations is implicated when agencies are involved in statutory or regulatory interpretation," 799 F.3d at 250. When an agency interprets a statute or regulation with the authority to create new obligations, the Court explained, a "higher standard of fair notice applies" because "agencies engage in interpretation differently than courts." *Id.* at 250–52. Unlike courts, which "resolve statutory ambiguity by applying traditional methods of construction," agencies "may also rely on technical expertise and political values," making it "harder to predict how an agency will construe a statute or regulation at some unspecified point in the future, particularly when that interpretation will depend on the 'political views of the President in office at [the] time.'" *Id.* at 252.

The Bureau's inconsistent and misleading guidance related to the Bankruptcy Code is the precise problem the *Wyndham* Court foresaw. In the Bulletin, the Bureau has interpreted the CFPA and the Bankruptcy Code, and has done so in a manner that both produces legal consequences and marks a sharp break from past guidance (as well as the statutory text). *See* Br. at 10–14, 25–27. The issue is not whether PHEAA had fair notice of what the CFPA requires, or how the Bureau currently interprets that statute, but rather whether the Bureau ***changed*** its position on an issue (*i.e.*, the dischargeability of private student loans) and now seeks to apply its new

position retroactively to sanction PHEAA for acting in accordance with its prior position. That is what due process forbids. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012); *PHH Corp. v. CFPB*, 839 F.3d 1, 44 (D.C. Cir. 2016).

There is no dispute that, for nearly a decade, the Bureau told Congress, the student loan industry, and the public that private student loans are dischargeable only on proof of undue hardship. *See* Br. at 10–12. It was only in 2022—***after*** PHEAA allegedly serviced "at least 177 non-qualified education loans," Compl. ¶ 36—that the Bureau reversed its position, first in a blog post and then in its 2023 Bulletin, claiming those private loans were subsumed in Discharge Orders. Br. at 12–13, 15–16.

The Bureau disputes none of this history. Instead, it blames PHEAA for honoring the Bureau's repeated comments to Congress and the regulated industry that private student loans are "virtually immune" from discharge absent a showing of undue hardship in an adversary proceeding.[2] The Bureau characterizes its longstanding guidance as "simply irrelevant," and contends that it "never adopted any 'new interpretation' of the Bankruptcy Code regarding these [private, non-qualified] loans." Opp. at 25, 27. But the Bulletin—and the Bureau's steadfast refusal to even acknowledge it—proves the opposite.

The Bureau's efforts to liken this case to *Wyndham* and *Navient* fail as well.

---

[2] CFPB, Private Student Loans: Report to the Senate Committee on Banking, Housing, and Urban Affairs et al. 71 (Aug. 29, 2012), https://files.consumerfinance.gov/f/201207_cfpb_Reports_Private-Student-Loans.pdf; *see also* Br. at 10–11 & n.6–11 (describing the Bureau's other like publications).

Those cases involved the inverse of the facts here. The defendants in *Wyndham* argued the agency gave ***no guidance*** on what the statutes at issue required or barred: "the FTC ha[d] not yet declared that cybersecurity practices can be unfair; there [was] no relevant FTC rule, adjudication or document that merits deference; and the FTC [was] asking the federal courts to interpret § 45(a) in the first instance to decide whether it prohibits the alleged conduct." *Wyndham*, 799 F.3d at 253. And the defendant in *Navient* went further, claiming the Bureau was required to issue a rule declaring conduct a UDAAP before it could initiate an enforcement action. *CFPB v. Navient Corp.*, 2017 WL 3380530, at *8 (M.D. Pa. Aug. 4, 2017). Neither case involved an agency issuing guidance on its interpretation of federal law, then changing its interpretation after regulated entities adapted their operations and compliance-management systems to comply prospectively, and then enforcing the new interpretation retrospectively. In that scenario, presented here, the standard is clear: "When a government agency officially and expressly tells you that you are legally allowed to do something, but later tells you 'just kidding' and enforces the law retroactively against you . . . , that amounts to a serious due process violation." *PHH Corp. v. CFPB*, 839 F.3d 1, 48 (D.C. Cir. 2016).

The Bureau's insistence that there is no retroactivity problem because it "alleged PHEAA is engaged in ***ongoing*** illegal conduct in violation of the CFPA," Opp. at 27, is belied by its own pleadings. *See* Compl. ¶¶ 36, 72 (alleging a specific number of violations between 2017 and 2021 and expressly seeking retrospective

relief). Further, the Bureau's defense betrays its recognition that due process ***would*** preclude the retroactive application of a "new interpretation" of a statute to "conduct that occurred before that interpretation." Opp. at 27 (quoting *PHH*, 839 F.3d at 49). As the Bureau implicitly concedes, *PHH* bars it from enforcing its new interpretation of Section 523(a)(8) to earlier conduct (before its 2023 Bulletin)—a timeframe that includes all of the acts alleged in Paragraph 36 of the complaint.[3]

### B. The Bureau's CFPA Claims Fail as a Matter of Law

#### *1. The Bureau Has Failed to State a Claim Under Section 5531*

With respect to "unfair" acts, the Bureau's own pleadings and matters of public record show that any alleged injury to consumers is reasonably avoidable. *See* Br. at 35–37. Contrary to the Bureau's argument, Opp. at 10, whether an alleged injury is "reasonably avoidable"—including whether consumers are "reasonably capable" of pursuing "potential avenues toward mitigating the injury after the fact"—is a question of law that is properly resolved on a motion to dismiss. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012) (affirming Rule 12(b)(6) dismissal of unfairness claim based on failure to plead facts showing injury was not "reasonably avoidable," including by "subsequent mitigation"); *see also In re Amazon Serv. Fee Litig.*, 2024 WL 3460939, at *9 (W.D. Wash. July 18, 2024), *appeal docketed*, No. 24-5176 (9th Cir. 2024); *Garland v. Children's Place*,

[3] If the Court is not inclined to dismiss the Bureau's claims in full, then at the very least it should dismiss the claims to the extent they target conduct before March 2023.

*Inc.*, 2024 WL 1376353, at *7–8 (N.D. Ill. Apr. 1, 2024).

While the Bureau tries to dismiss all the means of recourse present in bankruptcy court, it does not dispute that these means are readily available to consumers. Instead, it avers that the mitigation measures catalogued in PHEAA's brief are inadequate because they require "investment of 'time, trouble, aggravation, and money,'" which "is itself an unavoidable injury." Opp. at 10–11 (quoting *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010)). But if that were true, it would nullify the exception for *post hoc* mitigation. Indeed, the Ninth Circuit recognized as much two years after *Neovi*, when it clarified that the question "is not whether subsequent mitigation was ***convenient or costless***, but whether it was '***reasonably possible***.'" *Davis*, 691 F.3d at 1169 (quoting *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988)). Undertaking that inquiry, the Ninth Circuit in *Davis* rejected the plaintiff's argument that the available means of subsequent mitigation were inadequate merely because they would "negative[ly] impact" his credit score. *Id.* Rather, the unfairness claim failed because, notwithstanding any inconvenience or cost, the plaintiff "could have avoided" his injury through subsequent mitigation measures that were "reasonably possible." *Id.*; *cf. Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1368–69 (11th Cir. 2024) (consumers "are not without recourse" when they "could sue a furnisher for a declaration that they no longer owed a debt," even if options available are "surely frustrating").

The Bureau's remaining arguments are unavailing. As to its contention that

"many consumers may not pursue these avenues in court because they may be unaware their debts are discharged," Opp. at 12, that prospect only underscores the role of the bankruptcy court and the importance of available bankruptcy remedies. It also assumes, without any basis, that there has been a violation of a Discharge Order. And the Bureau's claim that basic notice to PHEAA is "futile" is contrary to its own pleadings, which confirm that PHEAA halts collection if "the loan owner directs." Compl. ¶ 28. After all, "[d]etermining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and a plaintiff can always "plead [itself] out of court by alleging facts which show that [it] has no claim." *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 369 (D.N.J. 2007).

With respect to "abusiveness," the Bureau again does not dispute that consumers have remedies in bankruptcy. Nor does it dispute that consumers' "legal rights to avoid collection" derive from and depend on bankruptcy law. Instead, it re-urges its groundless objection that those facts are not properly before the Court on this motion. *Compare* Opp. at 15, *with supra* at 14–15; *see CFPB v. Intercept Corp.*, 2017 WL 3774379, at *4 (D.N.D. Mar. 17, 2017) (dismissing abusive practice claim at 12(b)(6) stage). The Bureau's only substantive response is that "the availability of post hoc legal recourse does not change the oppressive nature of PHEAA's failure to maintain policies and procedures to assess whether the loans it services are discharged." Opp. at 15. But the well-pleaded facts in the complaint

do not support a reasonable inference that PHEAA "takes advantage"—let alone "unreasonable advantage"—of "oppressive circumstances," given the realities of the bankruptcy process and the protections the bankruptcy system affords consumers. *See Midland Funding*, 581 U.S. at 233–34; *see also* Br. at 36–38.

As to deceptive acts, the Bureau rehashes its argument that it has "alleged that private, non-qualified education loans are discharged by a standard bankruptcy Order of Discharge," and so PHEAA "misrepresented" that "consumers had an obligation to repay loan amounts that, in fact, they were no longer obligated to pay because they had been discharged." Opp. at 16–17. Again, whether any of the loans alleged by the Bureau in fact had been discharged by a Discharge Order is the legal issue at the heart of this case, and the Bureau cannot defeat a Rule 12(b)(6) motion by incanting—erroneously—that legal conclusion. *Supra* at 8–10.

*2. The Bureau Has Failed to State a Claim Under Section 5536*

Insisting that it "plausibly alleged" that PHEAA lacks "reasonable policies" to accurately furnish information about loans discharged in bankruptcy, the Bureau deploys a string cite for the proposition that it "is inaccurate for a furnisher to report to a CRA that an amount is owed on an account if the account balance has been discharged in bankruptcy." Opp. at 18. The key distinction that the Bureau elides is that there was no dispute in those cases that the debts had been discharged. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021); *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d 665, 668 (E.D. Pa. 2015).

The Bureau also misconstrues PHEAA's argument. The FCRA only makes certain types of factual "inaccuracies" actionable—a point of law that the Bureau does not contest—and this informs the standard for "reasonable" policies and procedures to ensure the "accuracy" of information furnished. *See Mader v. Experian Info. Sols. Inc.*, 56 F.4th 264, 266 (2d Cir. 2023) (dischargeability of private student loan debt constitutes a "legal inaccuracy [that] is not cognizable under the FCRA"); *Johnson v. TransUnion*, 2023 WL 6035573, at *4 (N.D. Ga. Aug. 11, 2023) (when accuracy of information "hinges entirely on whether the debt was discharged in bankruptcy," that "presents a legal issue" and "is not actionable").

The Bureau does not and cannot dispute the core principles of *Mader*. The Bureau's suggestion that furnishers should be held to a standard more demanding than the "objectively and readily verifiable" standard applied to CRAs is misplaced. The FCRA does not require furnishers to ensure that the debts they report would survive any and all legal challenges. *See* Br. at 40–41 & n.22 (citing cases); *see also Holden*, 98 F.4th at 1367–69 (consumers had no "actionable" FCRA claim against furnisher as the disputed information was not "objectively and readily verifiable").

## III. THE BUREAU'S FAILURE TO JOIN THE LENDERS AS NECESSARY PARTIES COMPELS DISMISSAL

### A. The Bureau's Enforcement Discretion Is Irrelevant

The Bureau's chief defense—that it enjoys functionally absolute enforcement discretion—is misplaced. Opp. at 36–38. The Bureau expressly pleads that PHEAA

has loan-servicing policies and lender-specific instructions that defer to the lenders as actual owners of the debt, *see* Compl. ¶¶ 23–24, 28–30, and it requests that the Court award both retrospective and prospective relief that includes rescission and reformation of contracts and refunds of sums paid. *Id.* ¶ 72. Insofar as the Bureau aims to subject the lenders' contractual rights to a decision by the Court, the lenders must be joined. *See, e.g.*, *Stillwagon v. Innsbrook Golf & Marina, LLC*, 2013 WL 1180312, at *15 (W.D. Pa. Mar. 20, 2013) (explaining that the court may not rescind a contract without the presence of all parties, and collecting cases). It is no answer that those contracts "are not the 'subject of the action'"; the Bureau's pleadings place those contracts squarely at issue—at least with respect to relief—and, as the Bureau concedes, "parties owning rights under disputed contracts generally have a legally protected interest" under Rule 19. Opp. at 42.

The Bureau also argues that the Lenders it fails to identify cannot be a "real party in interest" or have a "direct financial interest" in this case because the Court must accept as true the claim that the Lenders' rights under certain loan agreements have been extinguished. *Id.* Again, whether any given debt in fact was discharged is a ***legal*** conclusion, and one at the heart of this dispute. *See In re Piazza*, 605 B.R. 332, 336 (Bankr. M.D. Pa. 2019) (whether "any claim is non-dischargeable is a question of federal law governed by the provisions of the Bankruptcy Code").

### B. The Bureau's Focus on PHEAA's Burden Under Rule 12(b)(7) Ignores the Bureau's Initial Burden Under Rule 19

The Bureau's charge that "PHEAA fail[ed] to identify" lenders whose rights will be affected by this action gets things exactly backwards. Opp. at 41. Before PHEAA had a Rule 12(b)(7) burden to show necessary parties are indispensable, the Bureau had a Rule 19(c) burden to identify those parties. *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502 (D.N.J. 2000). The Bureau tries to excuse its default by disclaiming "evidence identifying specific lenders that have a contract that may confer the lender interest 'relating to the subject of this action.'" Opp. at 40. But the Bureau again contradicts its own pleadings, which specifically allege that PHEAA "attempted to collect on approximately 7,934 private student loans after a bankruptcy proceeding, at least 177 of which were non-qualified education loans." Compl. ¶ 36. The Bureau alone knows which loans it is referencing. Indeed, the Bureau ***must*** know at least the basic features of those loans—including the identity of the lenders—to make that allegation consistent with its Rule 11 obligations.

## <u>CONCLUSION</u>

PHEAA respectfully requests that the Court dismiss this action with prejudice and grant it all other relief to which it may be entitled.[4]

---

[4] The Court should not indulge the Bureau's passing request for leave to amend. Opp. at 44. The Bureau does not explain how it proposes to cure the defects in its complaint, *Middlesex Water Co. v. Pa. Pub. Util. Comm'n*, 2024 WL 199558, at *5 (M.D. Pa. Jan. 18, 2024) (Conner, J.), and the deadline for amendment has passed. Dkt. 31.

Dated: October 15, 2024

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Steve Dollar*
Steve Dollar (*Pro Hac Vice*)
Allison L. Silverman (*Pro Hac Vice*)
1301 Avenue of the Americas
New York, New York 10019-6022
Tel.: (212) 318-3000
steve.dollar@nortonrosefulbright.com
allison.silverman@nortonrosefulbright.com

Thomas A. Coulter (*Pro Hac Vice*)
799 9th Street NW, Suite 1000,
Washington, DC 20001-4501
Tel.: (202) 662-4765
tom.coulter@nortonrosefulbright.com

Ryan Meltzer (*Pro Hac Vice*)
98 San Jacinto Boulevard, Suite 1100,
Austin, Texas 8701-4255
Tel.: (512) 536-5234
ryan.meltzer@nortonrosefulbright.com

- and -

James J. Jarecki (PA 89580)
Pennsylvania Higher Education Assistance Agency
1200 N. 7th Street
Harrisburg, PA 17102
Tel.: (717) 720-1568
james.jarecki@pheaa.org

*Attorneys for Defendant Pennsylvania Higher Education Assistance Agency*

## CERTIFICATE OF WORD COUNT

I, Steve Dollar, hereby certify that the foregoing Reply in Further Support of Defendant's Motion to Dismiss is in compliance with L.R. 7.8(b)(3) and, pursuant to the Court's Verbal Order of September 24, 2024, does not exceed 20 pages in length.

*/s/ Steve Dollar*
Steve Dollar

## CERTIFICATE OF SERVICE

I, Steve Dollar, hereby certify that a true and correct copy of the foregoing Reply in Further Support of Defendant's Motion to Dismiss was served upon all counsel of record who are deemed to have consented to electronic filing through the Court's CM/ECF system on this 15th day of October, 2024.

*/s/ Steve Dollar*
Steve Dollar